The State ex rel. Robertson v. Hope.

## THE STATE *ex rel.* ROBERTSON v. HOPE *et al.,* Appellants.

1. **Instructions:** NON-REVERSIBLE ERROR. Instructions in themselves correct will not afford ground for reversal because they authorize a verdict for plaintiff on his theory of the case without embracing in the same instructions facts constituting defendants' theory of the case, where defendants' theory is properly presented in their own instructions.

2. ————. Instructions are properly refused which submit an issue (*e. g.,* the existence of a partnership) where there is no evidence tending to prove its existence.

3. **Fraudulent Conveyance:** CREDITOR PURCHASING: PRESUMPTION: BURDEN OF PROOF. A debtor having sold his stock of goods to one to whom he was largely indebted, evidence that he made the conveyance to defraud his creditors does not raise the presumption that the purchaser was a participant in the fraud, nor throw on him the burden of proof that he acted in good faith.

4. ————: ————. The fact that a part of the alleged indebtedness is fraudulent will taint the whole transaction and avoid the entire sale in favor of creditors.

*Appeal from Ray Circuit Court.* — HON. J. M. SANDUSKY, Judge.

REVERSED AND REMANDED.

*Gage, Ladd & Small* for appellants.

(1) Instruction, numbered 9, asked by the defendants ought to have been given. If part of the alleged debt, in professed payment of which the conveyance of July 12 was taken, was fraudulent, the whole conveyance was invalid as against creditors. *Clark v. Lee*, 44 N. W. Rep. (Sup. Ct. of Mich.) 266 ; *Wallach v. Wylie*, 28 Kansas, 359 ; *Butts v. Peacock*, 23 Wis. 359 ; *Brasher v. Jemison*, 13 S. W. Rep. 809 ; *Wallis v. Adoue*, 13 S. W. Rep. 63 ; *Freybe v. Tiernan*, 13 S. W. Rep. 370 ; *Cordes v. Straszer*, 8 Mo. App. 61 ; *King v. Hubbell*, 42 Mich. 599 ; Wait on Fraudulent Conveyances, 228 ; *Johnson v. Phillips*, 2 N. Y. Sup. 432 (Sup. Ct. N. Y.); *Lehman v. Greenhut*, 7 S. Rep. (Ala.) 299. (2) Plaintiff's instructions, numbered 1 and 2, ought not to have been given. They profess to cover the entire case and wholly ignore all the issues of fraud, which were made and tried. (3) Plaintiff's instruction, numbered 3, should not have been given. It singles out certain facts which a part of the testimony tended to prove, and declares that, upon those facts only, Robertson had a right to take the conveyance, and ignores other material facts which the testimony also tended to prove, and which, if true, would have rendered the conveyance to him invalid as against creditors. (4) Instruction, numbered 7, asked by the defendants, ought to have been given. It stated a correct proposition of law; there was evidence in support of it; and there was no other instruction which covered the ground. (5) Defendants' instruction, numbered 11, should have been given. (6) Instruction, numbered 10, asked by defendants should have been given. Bump on Fraud. Conv. [3 Ed.] p. 35 (transfer of all), p. 36 (embarrassment), p. 37 (expectation of suit), p. 38 (secrecy), pp. 39–40 (concealment), p. 51 (out of the usual course), p. 54 (unusual mode of payment), p. 54 (omission to produce

important witnesses), p. 55 (proof of payment of consideration), pp. 56–59 (relationship); *Richards v. Vaccaro*, 7 S. Rep. 506; (s. c., Miss. April, 28, 1890); *Klein v. Hoffheimer*, 132 U. S. 376–7; *Smith v. Craft*, 11 Biss. 349; *Benne v. Schnecko*, 100 Mo. 256–7; *Baldwin v. Whitcomb*, 71 Mo. 651; *Merrill v. Locke*, 41 N. H. 486; *Love v. Starkey*, 18 N. W. Rep. 49; *Arnholt v. Hartwig*, 73 Mo. 485; *Berry v. Whitney*, 40 Mich. 65; *Letson v. Reed*, 45 Mich. 27; *Carrier v. Cameron*, 31 Mich. 379; 1 Am. Lead. Cas. [4 Ed.] 53; *Cass County v. Green*, 66 Mo. 498; *Henry v. Sneed*, 99 Mo. 407; *Mayes v. Robinson*, 93 Mo. 114; *Rogers v. Hall*, 4 Watts, 359; *Street v. Goss*, 62 Mo. 229; *Lehman v. Greenhut*, 7 S. Rep. (Ala.) 299; *Leavitt v. LaForce*, 71 Mo. 354. (7) The verdict ought to have been for the defendants; and the judgment rendered upon it should be reversed by this court for the reason that the verdict was evidently the result of gross ignorance, partiality or prejudice, and not of calm deliberation on the part of the jury. *Baker v. Stonebraker's Adm'r*, 36 Mo. 345; *Price v. Evans*, 49 Mo. 396; *Whitsett v. Ransom*, 79 Mo. 258; *Spohn v. Railroad*, 87 Mo. 74; *Garrett v. Greenwell*, 92 Mo. 120.

*Karnes & Krauthoff* for respondent.

(1) Appellants' instruction, numbered 9, was rightly refused. *First.* It was erroneous in leaving to the jury to say whether any part of the indebtedness was fraudulent or justly owing. *Hickey v. Ryan*, 15 Mo. 62; *Anderson v. McPike*, 86 Mo. 293; *Speak v. Ely*, 22 Mo. App. 122; *Estes v. Fry*, 22 Mo. App. 80; *Boogher v. Neece*, 75 Mo. 383; *Dyer v. Brannock*, 2 Mo. App. 432; *Wiser v. Chesley*, 53 Mo. 547; *Morgan v. Durfee*, 69 Mo. 469; *Turner v. Railroad*, 76 Mo. 261. *Second.* The instruction did not assert a correct principle of law. *Albee v. Webster*, 16 N. H. 362; *Bank v.*

*Bertscby,* 52 Wis. 438 ; *Hulse v. Mershon,* 125 Ill. 52 ; *Cohn v. Ward,* 32 W. Va. 34. ( 2 ) The court did not err in refusing instruction, numbered 7, asked by appellants. There was evidence of partnership, on July 12, 1882, to authorize it. ( 3 ) The tenth instruction asked by the defendants was properly refused. Fraud is not to be presumed, but must be proved by him who asserts it. *Chouteau v. Sherman,* 11 Mo. 385 ; *Dallman v. Renshaw,* 26 Mo. 532, 544 ; *Rumbold v. Parr,* 51 Mo. 592, 598 ; *Henderson v. Henderson,* 55 Mo. 534, 555 ; *Page v. Dixon,* 59 Mo. 43, 47 ; *Burgert v. Borchert,* 59 Mo. 80, 83 ; *Ames v. Gilmore,* 59 Mo. 537, 543 ; *Funkhouser v. Lay,* 78 Mo. 458, 462 ; *Bank v. Murray,* 88 Mo. 191 ; *Weinstein v. Reid,* 25 Mo. App. 41, 50. ( 4 ) In the following cases, it was directly decided that the burden of proving the facts necessary to impeach a transfer on the score of fraud, including, of course, the essential element of participation by the vendee, rests upon him who alleges the fraud. *Gutzweiler v. Lackman,* 39 Mo. 91, 99 ; *Albert v. Besel,* 88 Mo. 150, 153 ; *Frederick v. Allgaier,* 88 Mo. 598, 604 ; *Bonney v. Taylor,* 90 Mo. 63, 67 ; *Hazell v. Bank,* 95 Mo. 60, 65 ; *Hard v. Foster,* 98 Mo. 297, 313 ; *Peltingill v. Jones,* 30 Mo. App. 280, 283 ; *Deering v. Collins,* 38 Mo. App. 80, 88 ; *Morgan v. Wood,* 38 Mo. App. 255, 270. ( 5 ) And in this state, it must now be regarded as settled law, in such a case as this, that it is not enough to defeat a preference that the vendee knew that the vendor was insolvent and intended to defeat or delay his other creditors by making the transfer. The vendee must have participated in such intent for the purpose of aiding its execution. *Shelley v. Boothe,* 73 Mo. 74 ; *Forrester v. Moore,* 77 Mo. 651 ; *Holmes v. Braidwood,* 82 Mo. 610 ; *Frederick v. Allgaier,* 88 Mo. 598 ; *Foster v. Mill Co.,* 92 Mo. 79, 88 ; *Sexton v. Anderson,* 95 Mo. 373, 379 ; *Kendall v. Baltis,* 26 Mo. App. 411, 414. ( 6 ) The verdict was not the result of ignorance, partiality or prejudice, but intelligence and calm deliberation on the part of the jury.

BRACE, J.—This is an action against the defendant Hope, formerly sheriff of Jackson county, and the sureties on his official bond to recover damages for the seizure on the fourteenth of July, 1882, by said sheriff under several writs of attachment against Samuel Schneider of a stock of goods, wares and merchandise found by the sheriff in the possession of Robertson, the relator, and who claimed the same as his own property. The creditors of Schneider indemnified the sheriff by bonds, and after seizure he advertised the goods and sold them at public auction, and applied the proceeds on the attachments against Schneider.

The issue is practically between the attaching creditors of Schneider and the relator, as to the *bona fides* of a transfer of the goods made by Schneider to the relator on the twelfth day of July, 1882, evidenced by the following bill of sale, and delivery of possession in pursuance thereof:

"This instrument, made on this July 12, 1882, witnesseth :

"That I am largely indebted to J. M. Robertson, of Kansas City, Missouri, and evidenced by promissory notes as follows :   One for $3,000, dated April 6, 1882; one for $2,500, dated March 7, 1882 ; one for $500, dated April 25, 1882; one for $1,000, dated May 10, 1882 ;  one for $738.84, dated May 9, 1882 ; one for $1,791.25, dated June 17, 1882 ; one for $1,275.25, dated July 8, 1882 ; one for $500, dated May 8, 1882 ; one for $500, dated May 8, 1882 ; one for $500, dated June 17, 1882 ; one for $500, dated June 5, 1882 ; one for $600, dated May 18, 1882 ; one for $400, dated May 16, 1882 ; one for $500, dated June 13, 1882 ; one for $500, dated May 8, 1882 ; one for $400, dated July 6, 1882, and one for $1,897.50, dated July 12, 1882, and all payable on demand, with ten per cent. interest per annum from date.   Now for, and in consideration of the satisfaction and surrender of said notes to me, and for the further

consideration that he, the said J. M. Robertson, under-takes and agrees to pay to Miss Carrie Rice the sum of about $1,200, which I now owe her, I hereby sell, assign and transfer to said J. M. Robertson my entire stock of goods, and all store fixtures in store at number 407 Dela-ware street in Kansas City, Missouri, and consisting of all the whiskey, brandy, wine, beer, cigars, tobacco, and generally and specially each and every article in or about said store or used in connection therewith, and all the fixtures, chairs, desks, tables, stoves, wagon, buggy, safe, or whatever else there may be in or about said store.  To be owned and enjoyed by the said J. M. Robertson free from any claim or demand of any kind whatsoever.

" Witness my hand the day and date above written.

"SAM SCHNEIDER."

The defendants claim that such transfer was made for the purpose of hindering, delaying and defrauding the creditors of the said Schneider.

The evidence for the plaintiff tends to show that for some years prior to August, 1881, the said Schneider had been engaged in the wholesale liquor and cigar business in Kansas City ; that the relator resided in said city and for some years had been engaged in specu-lating in whiskey, and selling the same in the West on commission for large dealers doing business in Louisville, Kentucky, and had accumulated considerable means ; that the relator and Schneider were friends, and that the former at times accommodated the latter with tem-porary loans in his business ; that on the fourth of August, 1881, he loaned him $1,800 for his business ; that on the tenth of August, 1881, they entered into the following copartnership agreement :

"Articles of agreement made and entered into this tenth day of August, 1881, by and between Sam Schneider, of Jackson county, Missouri, party of the first part, and J. M. Robertson, also of said county, party of the second part.

" The said parties have agreed, and by these presents do agree, to become partners together for the purpose of carrying on the business of wholesale liquor dealers at Kansas City, Missouri, which said copartnership shall continue from the date of these presents until the first day of January, 1883. It is agreed that the name of the firm shall be Sam Schneider & Co.

" It is agreed further that the firm shall assume and pay off the indebtedness of Sam Schneider, and that said party of the second part shall put into the firm the sum of $15,000, one-half of the same to be cash and one-half in merchandise, which can be used in the business of the firm.

" Said Schneider is to transfer to said firm all his stock, including accounts, bills receivable and collaterals, also his lease of the storeroom known as 407 Delaware street.

" The parties hereto do agree, that from time to time and at all times during said term, to use their best and utmost endeavors in and by all means possible to the utmost of their skill and power for their joint interest, profit and advantage.

" It is agreed that after the first day of January, 1882, that party of the second part may put a good and suitable business man, acceptable to said first party, in the place of said second party, so that said second party need not be actively engaged in the business, so long as said man works in his stead.

" The parties hereunto agree that the profits of the firm shall be divided equally.

" It is agreed that neither party shall draw out from the business of the firm to exceed the sum of $350 per month during the life of this contract.

" The firm shall keep a complete set of books, to which each party shall at all times have free access.

" An invoice shall be taken by the firm, in order to see how the firm stands, on the first day of January and July of each year.

"And it is agreed that, at the end of the partnership, there shall be a full and complete settlement of the firm affairs and a division of the assets."

The fact that Schneider had taken a partner into the concern was communicated to the Dun & Bradstreet Mercantile Agencies, but the name of the partner was withheld for business reasons. In a short time after this agreement was entered into Robertson became dissatisfied, and on the thirteenth of September, 1881, by mutual agreement the partnership was dissolved, Robertson, however, consenting at the solicitation of Schneider not to announce the dissolution until the first of January, 1882, and in the meantime to remain in supervision of the business, and to make such advancements as the business might require and receive the sum of $350 per month as salary. Including the advancement made to Schneider of $1,800 on the fourth of August, 1881, Robertson advanced to Schneider in the business as the same required it, up to January 1, 1882, the sum of $19,320, and there was returned to him $11,754.94, leaving a balance due him on that account January 1, 1882, of $7,565.06. At that date there was due him on salary account $105.13 and on account of individual loans outside of the business the sum of $700, making a total indebtedness of $8,370.19. On the third of January, 1882, they settled their accounts, and in discharge of his indebtedness Schneider paid Robertson $150 in cash, executed to him a due bill for $805.13, a promissory note for $1,415.06 payable in thirty days, and two other promissory notes each for the sum of $3,000, payable in sixty and ninety days. An entry of this dissolution of the partnership was on that day made upon the books of the concern, and the following agreement of dissolution was signed by the parties :

"It is hereby agreed mutually that the firm of Sam Schneider & Co. has been dissolved, and that all the matters and things between us have this day been fully

and finally settled in consideration of the sum of $150 in cash, the balance of which has been paid unto said J. M. Robertson, $7,441.06, in negotiable promissory notes of the said Schneider. Said Robertson is to withdraw from the firm and *to have nothing further to do with same.* Said Schneider is to own the entire business, and all the assets of the late firm, and said Schneider is to continue the business at the old stand.

" Witness our hands this third day of January, 1882.

" SAM SCHNEIDER,

" J. M. ROBERTSON.

" Witness by THEO KAYSEN."

The Dun and Bradstreet Mercantile Agencies were informed of the fact that Robertson had withdrawn from the firm of Sam Schneider & Co.

The evidence of the plaintiff tends to show that it was then agreed between Schneider and Robertson that the latter should remain in supervision of the business until these obligations of Schneider were paid, at a salary of $350 per month as before ; that the due bill for $805.13, and his salary until the first of May, 1882, was thereafter paid ; that the thirty-day note for $1,415.06 was paid at maturity ; that $500 was paid on the sixty-day note for $3,000, and a new note given for remainder dated March 7, 1882, for $2,500 ; that the other $3,000 note, nothing having been paid on it, was renewed for the same amount on the six of April, 1882, both of these notes were payable on demand, and are the first two notes recited in the bill of sale.

Plaintiff's evidence tends to show that between the twenty-fifth of April and the twelfth of July, 1882, Robertson advanced or loaned to Schneider, to be used in his business, in cash and warehouse receipts for whiskey, the several amounts for which the other notes recited in the bill of sale were given except the last one for $1,897.50 ; the loans between these dates aggregating $9,705.34 ; that the note for $1,897.50 was executed cotemporaneously with the bill of sale ; that it was given for that

amount of warehouse receipts which Robertson had loaned or deposited with Schneider in the fall of 1881, and which had by him been hypothecated at the Bank of Kansas City, but for which Robertson had never taken a note or received credit on the books of the concern ; that all these notes amounting in the aggregate to the sum of $17,102.84 were surrendered to Schneider upon the execution of the bill of sale, as the consideration for the stock of goods thereby conveyed to Robertson.

The evidence shows that Robertson immediately took possession of the goods, caused Schneider's sign to be removed and posted the following notice on the front door :

"This entire stock of goods and all the fixtures in this store, and everything used in connection herewith, has this day been sold to me, and I am in possession of the same, July 12, 1882.

"J. M. ROBERTSON."

He closed the doors and commenced taking an invoice, continuing the next day with closed doors, the sheriff appeared with the writs of attachments and demanded admittance, which was refused ; Robertson informing the sheriff that he would open the store as soon as he finished the invoice. On the following day, the fourteenth of July, the sheriff again appeared with his writs, and finding the doors still closed broke into the storeroom through the back door and seized the goods, which he afterwards sold at public auction to the highest bidder after due notice, first having had them appraised, the appraisement amounting to $12,800.20, the sales amounting to $11,157. The invoice taken by Robertson and his assistants on the basis of original cost with freight to Kansas City added amounted to $17,473.26.

The evidence tends to show that Schneider was largely indebted at the time the transfer of his goods to Robertson was made over and above the value of his

assets ; that prior to August 10, 1881, the business was done and the goods bought in the name of Sam Schneider ; that from that date until the first of January, 1882, they were bought in the name of and billed to Sam Schneider & Co., and from the first of January, 1882, until his failure they were bought and billed in the name of Sam Schneider. The bills for which the attachments were sued out were bought after the first of January, and some of them very recently before the failure.

The evidence for the defendant tended to show that the transfer to Robertson included all the visible property of Schneider; that when the sheriff secured entrance into the storeroom Schneider's books were not, and at that time could not be, found ; that within a short time thereafter the sheriff discovered other goods in Schneider's mark, with the mark scratched and partially erased, in the possession of other parties ; levied upon the same as Schneider's property, afterwards sold them and appropriated the proceeds realized upon such sales amounting to the sum of $3,123.86 on judgments in attachment suits.

What became of Schneider's books, it is impossible to tell from the evidence ; several years after, some of them were found in the possession of Schneider in Chicago. As to the debts due the concern upon the books, the amount thereof, and what became of them, there is no evidence.

The case was first tried at the October term, 1882, of the Jackson county circuit court and resulted in a verdict for the defendants. On appeal to the supreme court the judgment on that verdict was reversed and the cause remanded. 88 Mo. 430. Afterwards a change of venue was awarded to the circuit court of Ray county, in which the case was tried at the October term, 1887, a verdict found for the plaintiff for $17,430.20, and from the judgment rendered upon the verdict the defendants appeal.

The case was submitted to the jury upon the following instructions for the plaintiff :

"1. If the jury believe from the evidence that Sam Schneider was actually indebted to said J. M. Robertson in the amount of the several notes read in evidence, and that, for the purpose of paying said notes on July 12, 1882, he conveyed to said Robertson the stock of liquors, cigars, fixtures, etc., in the store of said Schneider at number 407 Delaware street, and delivered him possession thereof, and that the said property so conveyed was no more than was reasonably necessary to pay said notes, then the said property became the property of said Robertson. And if you believe that afterwards the defendant Hope, as sheriff of Jackson county, under and by virtue of said writs of attachments against said Schneider, levied upon and took said property or any part thereof, then you will find in this action for the plaintiff, and assess his damages at the value of the property so taken.

"2. Although the jury may believe from the evidence that Schneider was largely indebted to other parties than said Robertson, and that he had many and large sums of money due him which he fraudulently concealed for the purpose and with the intent of placing the same beyond the reach of his other creditors ; yet, if you further believe that said Schneider was indebted to said Robertson in the amount of the notes read in evidence, and that in payment of said indebtedness said Robertson received the property described in the petition for the purpose of such payment and none other, and that subsequently the defendant Hope, under and by virtue of writs of attachments against said Schneider, levied upon and took said property, then you will find for the plaintiff.

"3. If the jury believe from the evidence that Schneider was actually indebted to Robertson, as shown by the notes read in evidence, and that in payment of

the same Schneider conveyed and delivered to him the property described in the petition, and that the property so conveyed was no more than was reasonably necessary to pay said notes, then said Robertson had a right to take said property, and said conveyance was not fraudulent, although the jury may further believe that said Schneider had other property which he fraudulently concealed from his other creditors for the purpose and with the intent to hinder and delay such other creditors in the collection of their debts.

"4. The court instructs the jury, that if you believe from the evidence that Sam Schneider made the conveyance of his stock of goods, fixtures, etc., at number 407 Delaware street, to J. M. Robertson with the *bona fide* intention of preferring him to the exclusion of other creditors, then he had a right under the law to make such preference and said Robertson had a right to accept said preference and receive said property in payment of his debt, and such transfer is not fraudulent or made to hinder, delay or defraud creditors, although it may have included the entire stock of said Schneider, and although all the other creditors of said Schneider may have been left unpaid by reason of such transfer, and although said Schneider may have been insolvent at the time of said transfer to the knowledge of said Robertson."

For the defendants :

"1. The jury are instructed that, unless they believe from the evidence that the claim of Robertson was an honest, *bona fide* debt, the plaintiff cannot recover.

"2. The jury are instructed that even if they believe from the evidence that Schneider owed Robertson on the twelfth day of July, 1882, and that Robertson took his stock of goods in payment of his debt, and for a debt assumed by him ; yet if also they believe from the evidence that the transfer of said goods was made, not only for the purpose of paying Robertson,

but was also part and parcel of a scheme devised by Schneider for the purpose of hindering, delaying or defrauding any of his creditors, and that Robertson had notice of such purpose, and in taking said stock participated therein, and in any way aided or assisted or attempted to aid or assist Schneider in said purpose, then the transfer of said stock was fraudulent and void as to Schneider's other creditors, and your verdict must be for the defendants.

"3. The jury are instructed that even if they believe from the evidence that Robertson took the Schneider stock in payment of a debt actually owing to him; yet, if they also believe from the evidence that Robertson intended in taking said stock, not only to make his own debt, but also to assist Schneider, and did assist Schneider, in hindering, delaying and defrauding any of his other creditors, they will find for the defendants.

"4. If the jury believe from the evidence that Schneider and Robertson were partners from August 10, 1881, to January 3, 1882; that the business had been a losing one, and that the firm was then dissolved when owing a large amount of money, Robertson retiring; and if they should believe from the evidence that in making said dissolution it was intended by said Schneider and Robertson to give opportunity to convert the mercantile indebtedness of Sam Schneider & Co., for all of which Robertson was liable, into individual indebtedness of Schneider's and then pay Robertson in full, in preference to such new creditors, out of goods bought wholly or in part by contracting such new indebtedness, and that the sale from Schneider to Robertson on July 12, 1882, was made in furtherance of that intention, then such sale was and is fraudulent as against plaintiffs in the several attachment suits offered in evidence, and the verdict must be for the defendants, notwithstanding the jury may also believe from the evidence

that Schneider was at the time, in fact, indebted to Robertson in a large sum of money.

"5.    The jury are instructed that, although fraud is not to be presumed without proof, yet it may be proved by circumstances.    Direct evidence of fraudulent intent is not required.

"6.    That the jury is the sole judge of the credibility of the witnesses testifying in this case, and, in determining the weight of credibility to be given to the testimony of any of the witnesses, the jury is at liberty to take into consideration the bias of interest, if any there is, that such witness may have in the result of the trial, and, if the jury believe that any witness has wilfully testified falsely to any material fact in the case, it is at liberty to disregard any part, or the whole, of such witness' testimony."

The defendants asked, but the court refused to give, the following instructions :

"7.    The jury are instructed that if it appear from the evidence that Sam Schneider and the relator Robertson became partners on August 10, 1881 ; that said copartnership continued till January, 1882 ; that, although the form of dissolving said partnership was gone through with at that time, it was nevertheless agreed between Schneider and Robertson that the same relation that had previously existed between them should be continued until Robertson should be repaid all that he had contributed to the firm, and that the same never took place, then it was unlawful for Robertson to receive any transfer of the assets of said concern in payment of any claim by him, and the verdict should be for the defendants unless the jury should further believe from the evidence that the concern had sufficient available assets to pay all of its creditors in full.

"8.    If the jury believes from the evidence that from the tenth day of August, 1881, until the first day of January, 1882, a partnership existed between Robertson and Schneider, and that, notwithstanding the books

of the concern show a dissolution on or about January 1, 1882, the same arrangement in substance continued to exist until about May 1, 1882, then the plaintiff cannot recover.

"9. If the jury believe from the evidence that any part of the alleged indebtedness from Schneider to Robertson for which goods in question were sold was fraudulent and not justly owing to Robertson from Schneider, then the sheriff had a right to levy the writs of attachments on the said goods, and the plaintiff cannot recover.

"10. If the jury believe from the evidence that Sam Schneider, at the time of making his conveyance of his stock of goods, was largely indebted to Robertson, and that he made said conveyance to the plaintiff fraudulently for the purpose of hindering, delaying or defrauding his creditors, and that at the time of the levying of the attachments upon said property by the defendant Hope the plaintiffs in said attachment were, and at the time and before said conveyance, creditors of said Schneider, then the jury are instructed that the burden of proof is upon the plaintiff to show by evidence that he purchased said stock of said Schneider in good faith, and that the presumption is that he did not purchase said stock in good faith, but that in purchasing said stock he was aiding the said Schneider and participating with him in his attempt to hinder, delay or defraud his creditors.

"11. The jury are instructed that if they believe from the evidence that Robertson contributed from time to time sums of money or merchandise to be used in the business of Sam Schneider under a secret agreement or understanding between him and Schneider that they were not as between themselves to be considered partners, but that such sums were to be credited on the books as loans by Robertson, and that Robertson was in fact a partner, and was to receive for the use of his money and whatever services he might render a certain

part of the profits which was to be called salary, and that such arrangement was simply a device concocted by him and Schneider to cover up his true relations to the business, with a view on their part that if reverses should overtake the business Robertson might appear in the position of a creditor and not a partner, and that such arrangement was continued until just before Schneider's failure, then the jury will find for the defendants, and, in determining whether such an under-standing or agreement did exist, the jury may take into consideration all the circumstances of the case as detailed in evidence.''

The errors assigned are :

*First.* That the court erred in giving plaintiff's, and in refusing to give defendants', instructions.

*Second.* That the verdict of the jury is unsupported by the evidence, and the court erred in not granting a new trial for that reason.

The action of the court in giving instructions, numbered 1 and 2, for the plaintiff and in refusing instructions, numbered 7, 9, 10 and 11, for the defendants is pointed out and urged by counsel for defendants as the error in instructions for which the judgment should be reversed, and to these our attention will be particularly directed.

I. The point of the only objection urged against plaintiff's instructions is that they authorize a verdict for plaintiff upon his theory of the facts in the case, without embracing in the same instructions other facts constituting defendants' theory of the case. If, however, the legal propositions they contain are correct (and this is not disputed), and defendants' theory was properly presented to the jury in their own instructions, this mode of instruction would not furnish cause for reversal. *Owen v. Railroad,* 95 Mo. 169 ; *Burlington First Nat. Bank v. Hatch,* 98 Mo. 376 ; *Dougherty v. Railroad,* 97 Mo. 647.

II. The seventh, eighth and eleventh refused instructions of the defendants are predicated upon the hypothesis that at the time the transfer was made by Schneider to Robertson on the twelfth of July, 1882, they were partners in fact. The principal vice of these instructions is that they have no evidence to support them. The uncontradicted evidence is that the partnership formed between the parties on the tenth of August, 1881, was dissolved on the thirteenth of September, 1881. There is no evidence whatever that any partnership was formed between the parties after that date. The fact that Robertson consented to be held out and nominally considered as to third parties a partner until the first of January, 1882, is no evidence of an actual partnership *inter sese* after the dissolution; and the public announcement of the dissolution on the third of January, 1882, could certainly have no tendency to prove either a continuance of the original or the formation of a new partnership between them. Nor is there any evidence tending to show that after that date the relation of partners as between themselves was ever created by agreement, or for that matter that they were ever after that date held out as such to the public. Actual partnership is the creature of agreement; without some evidence of a copartnership agreement no copartnership in fact could be found. The court committed no error in refusing to give the seventh, eighth and eleventh instructions of defendants.

III. Defendants' tenth refused instruction asserts the proposition that, if Schneider transferred the goods in question to Robertson with intent to hinder, delay or defraud his creditors, then the presumption is that Robertson accepted the transfer with the same intent, and the burden of proof is upon him to show that he did not; in other words, if the jury find that the debtor was guilty of a fraudulent purpose in making the transfer, they must presume the creditor guilty of the same

fraudulent purpose, in accepting it, and this presumption becomes conclusive unless he shows his innocence of such fraudulent intent.

If the creditor is guilty of fraud, it is because he is a participant in the fraudulent intent of the debtor. To charge that he is such a participant is to charge him with fraud. Upon him who charges fraud rests the burden of proof. The fact that another is guilty of fraud in the same transaction cannot, in the nature of things, shift the burden of such proof. That the proposition contained in this instruction cannot be supported on principle is evident upon the face of it; and it is demonstrated by a long line of authorities in this and other states cited by counsel for the relator in their brief.

IV.   The several instructions given by the court placed before the jury in a general way the question of the *bona fides* of the indebtedness recited in the bill of sale, as a whole. By the ninth instruction which the court refused to give, it was proposed to submit to the jury the particular question whether or not part of the alleged indebtedness was fraudulent, and to declare if the jury so found that the plaintiff could not recover. The phrase, "was fraudulent and not justly owing," in this instruction is criticised, but we fail to see how the word fraudulent is more obnoxious in this instruction than is the same word when used in plaintiff's instructions, or how the words, "justly owing," can be more fraught with mischief than their equivalent, "actually indebted," as used by plaintiff in his instruction in regard to the same subject. The obvious meaning of the instruction as these words are therein connected when applied to the facts of the case and read in connection with the other instructions in the case is, that if the jury find that a part of the notes recited in the bill of sale are fictitious demands, not honest debts, fraudulent as defined in the other instructions given, the

plaintiff cannot recover, and the material question is whether this is a correct legal proposition.

The general doctrine on this subject, as expressed in Wait on Fraudulent Conveyances, second edition, section 228, is that "a false statement of the consideration of a mortgage, or of a conveyance or transfer, or the creation of a fictitious indebtedness is a badge of fraud, and is a proper element for the consideration of the jury in determining the *bona fides* of the transaction. Such a recital does not usually render the instrument void *per se*, and in some instances the transaction will be allowed to stand for the amount of the consideration given, and will be void only for the excess."

In the same connection the learned author quotes with approval the *dicta* of RUFFIN, C. J., in *Hawkins v. Alston*, 4 Ired. Eq. (N. C.) 145 : "No device can be more deceptive and more likely to baffle, delay or defeat creditors than the creating incumbrances upon their property by embarrassed men for debts that are fictitious or mainly so. The false pretense of a debt, or the designed exaggeration of one is an act of direct fraud ;" and the learned author sums up by saying, "it results then from a review of the authorities that a false recital of consideration in an instrument in the absence of explanation justifies a finding of fraud, that the mis-recital must be intentional and not accidental, and is subject to explanation, and that the evil design must be mutual, otherwise the transaction will stand against creditors except as to the excess."

In *Clark v. Lee*, 44 N. W. Rep. (Mich.) 260, in which the parties sustained the same relations as in the present case, it was held error that the court refused to instruct the jury on the facts in the case ; that the plaintiffs in the case rely upon their bill of sale from Monroe to them as the evidence of their title. If any part of the consideration of the said bill of sale was fraudulent and void, it would taint the whole transfer,

and render such instrument entirely void, and the plaintiff could not recover.    And the court proceeds to say: "If it is found that the title did not pass to the plaintiffs under the bill of sale so as affects the rights of the creditors of Monroe to take possession of the goods under their writs, the fact that the plaintiffs had rights under the mortgages would not debar the attaching creditors from taking possession and bringing the goods to sale subject to such valid claims as the plaintiffs might have."

In *Wallach v. Wylie*, 28 Kansas, 138, it was held as a conclusion of law that, where the larger portion of the indebtedness pretended to be secured by a chattel mortgage was fraudulent, it rendered the whole mortgage utterly void and of no effect. In *Butts v. Peacock*, 23 Wis. 359, it was held that the taking of a mortgage for a greater amount than is due from one known by the mortgagee to be in failing circumstances and pressed by his creditors is conclusive evidence of fraud. In *Brasher v. Jemison*, 12 S. W. Rep. (Tex.) 809, upon a like issue with the one in hand, the court held that, if the consideration or any part of it alleged to have been paid by T. W. Brasher to J. A. Brasher for the goods was unreal and fictitious, then the transfer would be fraudulent, the court saying: "If any portion of the consideration recited in the bill of sale was unreal or fictitious the transfer would be fraudulent because the law will not attempt to ascertain what part of the consideration is genuine; there being a part of it unreal and fictitious the entire conveyance is tainted with the fraud; * * * unless it be shown that the amount inserted was done by mistake, or in some way not affecting the fairness or *bona fides* of the transaction." And the same court in *Freybe v. Tiernan*, 13 S. W. Rep. 370, affirming the position taken in *Brasher v. Jemison, supra*, says: "We are of the opinion that when an insolvent debtor transfers to a creditor property

in satisfaction of the debt, and in the conveyance over-
states the amount of the indebtedness which purports
to be extinguished by the transfer, such false state-
ment, in the absence of some satisfactory explanation,
should be held conclusive evidence of fraud.'' See also
*Lehman v. Greenhut*, 7 S. Rep. ( Ala.) 299.

The doctrine of these authorities has been recog-
nized in this state : *Kuykendall v. McDonald*, 15 Mo.
420 ; *Cordes v. Straszer*, 8 Mo. App. 61 ; *McNichols v.
Rubleman*, 13 Mo. App. 515 ; *Hanna v. Finley*, 33
Mo. App. 645. In *Kuykendall v. McDonald, supra*,
it was said the law will not suffer a creditor, although
he may have a just demand against his debtor, to use
that debt as a screen to protect the debtor's estate from
his other creditors when that estate exceeds much in
value the amount of the debt ; ''when a creditor by
fraud will attempt to defeat the claims of other credit-
ors, there is no hardship in postponing his demand,
although a just one, to those which he has endeavored
to defeat.'' In *Cordes v. Straszer, supra :* '' A convey-
ance made in good faith is not void, merely because it
delays some creditors, or because it is intended to delay
them ; but a conveyance made in bad faith, by collusion
between the debtor and creditor to cover up property,
by naming and professing to secure an indebtedness not
really existing, is void as to creditors ; and the fact that
it also names a real, existing indebtedness, and is really
made to secure that real debt, will not save the deed.''

The question recurs, in the light of the principles
enunciated in these authorities and to which many
others of like tenor might be added, ought defendants'
instruction, numbered 9, to have been given to be read
in connection with the other instructions given, and
with them applied to the evidence in the case. While
the instruction is not happily worded, and ought not by
any means to serve as a model to be followed in a like
state of case, yet we think it presented substantially a

proper issue of fact on which the jury ought to have been directed to pass, and ought not to have been refused absolutely. The jury in the other instructions were in effect correctly told that if the debts recited in the bill of sale in gross were not *bona fide*, that they were fraudulent as against the attaching creditors, and the plaintiff could not recover, and by this instruction they were simply told that if a part of that alleged indebtedness was not *bona fide* the same result must follow. That the evidence in the case called, and called loudly, for an instruction presenting substantially this feature of the case to the jury, will be made evident by a moment's consideration of some of the salient facts as they appear in the evidence.

It will be observed that the aggregate amount of the indebtedness recited in the bill of sale is $17,102.84; that the amount of Robertson's invoice of the goods is $17,473.26; that these constituted all the visible assets of the concern. There is a remarkable correspondence here, between the amount of the debtor's effects within reach of his creditors, and the amount of the debts by which his preferred creditor absorbs all of these effects.

This, of course, might have been a mere coincidence, but in view of the fact that the relator had had supervision of the business for more than ten months previously and must have known the condition of the affairs of the concern, its liabilities, its stock on hand, and its other assets, if any it had, suggests at least a scrutiny into an indebtedness so nicely adjusted as to take in just everything in sight. The result of such a scrutiny suggests at once a differentiation in the items which go to make up the sum of that indebtedness. That the relator should have loaned his friend Schneider $1,800 before they went into partnership on the tenth of August, 1881; that they should have gone into partnership on that day; that he should have put money into the concern; that upon becoming more familiar with its

business he should become dissatisfied and want to withdraw; that the partnership should in consequence have been dissolved, but that, at the earnest solicitation of his friend, who represented to him that without his aid and assistance he would be ruined, he should consent to be held out as a partner for the credit of the concern, and furnish it temporary loans from time to time as the business might require until the first of January, 1882, in consideration that then the dissolution should be announced, his advancements repaid him, and in the meantime he should supervise the business and receive a salary of $350 per month; that on or about the first of January, 1882, the dissolution should have been announced, the accounts between them settled up, and notes executed by Schneider for the balance due him on account of such advancements and for salary, is not irreconcilable with the ordinary experience of business men; that in the salary account a balance of $105.13 should be swelled to $805.13 upon such a settlement by a loan between parties outside the business and which seems to have been entirely forgotten by the relator on the first trial, may be accounted for on the score of the treachery of human memory.

So that the balance found by the parties on this settlement made on the third of January, 1882, and settled by the execution of promissory notes and due bills, on the evidence, may be reconciled with the theory of fair dealings. That afterwards the relator should, by agreement remain in supervision of the business at the same salary until the balance then found to be due him should be paid him; that the relator, as he says, did nothing to earn his salary, while peculiar, is not unreasonable. That the notes given to secure the indebtedness on the settlement of January 3, 1882, remaining unpaid in April, 1882, should be renewed for such amounts as remained unpaid, seems not out of the usual course of business. And the jury may well have found that when the last of these

renewals was made, on the sixth of April, 1882, Schneider really did owe the relator the sums of money evidenced by the first two notes recited in the bill of sale amounting to $5,500. Then a remarkable state of case follows. On the twenty-fifth of April, 1882, the relator is remaining in supervision of this business at a salary of $350 per month which he promptly withdraws from the resources of the concern. He has vainly waited for nearly four months for that concern under his own supervision to get into condition and be able to pay him his claim of $5,500; its affairs have been strained and embarrassed since the thirteenth of September preceding, when he consented to remain a nominal partner and lend it assistance to keep it afloat at the earnest solicitation of Schneider.

It lost money in 1881, and the relator must have known it; at that date it was evident that it was on the down grade, hastening to the inevitable financial catastrophe, which swallowed it up in July, 1882. And yet the evidence shows that the relator, who ought to have known more about the affairs of this concern than any one, not even excepting Schneider, according to his statement and the claim he makes, rushed into this concern between the twenty-fifth of April and the eighth of July, 1882, the sum of $9,705.34, while complacently looking on at the stock on hand being supplied and renewed by the goods of these attaching creditors coming into the concern up to the very moment when he pounced upon them. This is indeed sending "good money after bad" with a vengeance, and the jury ought to have felt themselves, under the instructions, at liberty to inquire *particularly* how "good" this money was, if any such moneys went into the concern, and if they found that such moneys really did not go into the concern, or was put in there in bad faith and with intent to defraud Schneider's creditors, that they were not precluded from finding for the defendants on that account,

because the notes of $5,500 in the bill of sale represented an honest debt.

There was another item, the last one, of $1,897.50, which fails to appear in all the transactions of these parties from August 10, 1881, to January 3, 1882, that was entirely lost to their memory in the settlement at the last-mentioned date, and that is entirely absent from consideration in all the subsequent transactions between the parties until the twelfth of July, 1882, when the bill of sale was prepared, and when, for the first time, it seems to have been evolved from the inner consciousness of the parties, is at once evidenced by a promissory note, signed by Schneider, inserted in the bill of sale, and before the ink is dry is canceled and returned to him. This ought to have been particularly inquired into by the jury, and their right to do so as an independent matter ought to have been plainly and distinctly placed before them by the court, and we do not think the ends of justice were subserved in this case in this particular, by the general instructions under which, properly construed, they were, of course, at liberty to make discrimination in the alleged indebtedness ; but they may not have so considered themselves.

These general instructions ought to have been supplemented by some such instruction as number 9, which would have plainly informed the jury if they found these or any other items "fraudulent," *i. e.*, fictitious demands, not honest debts, it was such a fraud as would vitiate the whole transfer, and notwithstanding the technical objections urged against this instruction and the verbal criticism to which it may be obnoxious, in substance it ought to have been given in connection with the other instructions in the case. And for the error of the court in refusing it, the judgment will be reversed and the cause remanded. All concur except BARCLAY, J.

BARCLAY, J. (*dissenting*).—My associates think this case should go back for a new trial, because of the refusal to give this instruction, viz.:

"9.   If the jury believe from the evidence that any part of .the alleged indebtedness from Schneider to Robertson, for which the goods in question were sold, was fraudulent and not justly owing to Robertson from Schneider, then the sheriff had a right to levy the writs of attachment on the said goods, and the plaintiff cannot recover."

With great respect for their opinion, it, nevertheless, seems to me in this instance mistaken.

There can be no error in a civil action in refusing an instruction which, either in form or substance, fails to accurately express some proper rule of law, not otherwise stated, to guide the triers of fact.   If a proposed instruction is justly "obnoxious to verbal criticism" ( as my brethren concede this to be ) the trial court should rather be commended than blamed for rejecting it.   But, in my view, their estimate of its shortcomings is far too mild.

This instruction would submit to the jury as a question of fact whether "any part of the alleged indebtedness from Schneider to Robertson," etc., "was fraudulent and not justly owing to Robertson from Schneider."   It would thus authorize them to apply principles of their own to decide the issue of fraud, instead of the rules of law on that point expressed in the other instructions.  *Hickey v. Ryan,* 15 Mo. 63.

What meaning does the word "fraudulent" bear, in the connection in which it here appears ?   Does it signify nothing more than "not justly owing ?"   Or does it introduce a broader rule for ascertaining fraud than is embraced in that concerning an intent to hinder, delay or defraud creditors ?   "Fraudulent" as to whom ?   As to creditors or as to Schneider only ?   If Robertson, by some fraud ( as established by the law of the jury )

The State ex rel. Robertson v. Hope.

in the accounting, had succeeded in obtaining a settlement and notes for some hundreds too much, and hence "not justly owing" by Schneider, would that fact, under this instruction, have defeated a recovery, irrespective of plaintiff's intention, in so acting, to hinder delay or defraud the other creditors in question? Who can tell? There is such uncertainty in the language used, on all these important points, that the trial judge, it seems to me, was right in sparing the jury its consideration.

Ten declarations of law were actually given. Under them the jury must have found, as essential to a verdict for plaintiff, "that Sam Schneider was actually indebted to J. M. Robertson in the amount of the several notes read in evidence" ( see instruction, numbered 1, for plaintiff; and those numbered 2 and 3, on that side, embody the same idea); that the claim, on plaintiff's part, was for an honest debt ( see defendant's instruction, numbered 1); and that, in the entire transaction, plaintiff in no way aided, or assisted, or intended to hinder, delay or defraud other creditors of Schneider. ( See plaintiff's instructions, numbered 3 and 4, and defendants', numbered 2 and 3.)

The verdict on these points for plaintiff, in my judgment, necessarily included a finding in his favor on the issue on which such stress is laid in the majority opinion.

It has never been regarded as error to refuse a declaration of law of which the essential points are otherwise submitted to the jury.

After a careful reading of the instructions given, it appears to me that no correct legal principle, applicable to the case, and not already declared by the court, is contained in defendant's refused instruction, numbered 9. Therefore this dissent from the reversal of the judgment for the reason assigned.