Gleitz v. Schuster.

FRANCISTA GLEITZ, Appellant, v. SCHUSTER et al.

### Division One, March 29, 1902,

1. **Fraudulent Conveyance:** GRANTEE'S KNOWLEDGE OF GRANTOR'S
   FRAUD: GIFTS. A conveyance by a father to his children in settle-
   ment of bona fide gifts received from their deceased mother's father,
   although made with a fraudulent intent on his part, does not affect
   the legality of the transaction if they did not share in the fraudulent
   purpose.

2. ———: ———: OLD GIFTS: VALUE: EVIDENCE OF GRANTOR'S INTENT.
   The holding of the trial court that the grantor's going back thirty
   or forty years to bring up small gifts and the accumulating of inter-
   est on them for all these years, in order to show an indebtedness
   equal to the value of the property, was evidence of a fraudulent in-
   tent on his part, is not disturbed.

3. ———: FICTITIOUS DEBT: KNOWLEDGE. Grantees who received a
   deed from their father in settlement of an honest debt due them are
   chargeable with the fraudulent design of the grantor if they were
   conscious that a portion of the debt was fictitious. And that knowl-
   edge will taint the whole transaction, and authorize the court to set
   it aside as fraudulent. But if the receiving of more value than they
   were entitled to was nothing worse than a mistake on their part as
   to the amount really due them, the transaction is not fraudulent, and
   they are not liable to the grantor's creditors.

4. ———: USE OF PROPERTY BY GRANTOR. The fact that the grantees
   in a deed, made by their father in settlement of gifts to him for them
   from their grandfather, allowed him to collect and use the rents on
   the property, is satisfactorily explained by the fact that he was old
   and without income, while they were well-to-do and self-supporting.

5. ———: ATTACHMENT AND SALE: INTERESTS OF OTHER CREDITORS. A
   creditor who has brought suit by attachment against the grantor of
   a fraudulent conveyance (not joining the grantees as defendants),
   obtained judgment, and bought the land at execution sale and ob-
   tained a sheriff's deed thereto, has obtained the title to the land to
   the exclusion of the grantees and all other creditors, if such deed was
   in fact fraudulent and void. And a conveyance by such execution

purchaser to the grantees in the fraudulent deed carries to them a good title. The proceeds of this last deed do not enure to the creditors of the original fraudulent grantor, although the consideration therefor was obtained by a sale by such grantees of a part of the land sold under the attachment proceeding.

Appeal from Andrew Circuit Court.—*Hon. A. D. Burnes,*
Judge.

AFFIRMED.

*Charles M. Street* and *Culver & Phillips* for appellant.

(1)   The court correctly found from the evidence that the transfer was made with the intention on the part of Schuster to hinder, delay and defraud his creditors. The court refused to find that the grantees participated in that intention and for that reason dismissed appellant's bill. In this the chancellor erred. The court must have found that the grantor made the transfer to hinder, delay and defraud his creditors upon one or both of these theories: (a) that a portion of the consideration was a fictitious debt; (b) that the title to the property was lodged in the children for the use and benefit of the father so as to keep it beyond the reach of the other creditors. This is necessarily so since no other theory was presented by the evidence, and no other theory is possible from the circumstances of the case. As the court found either one or both of these theories to be true, it should have found that the grantees participated in the fraud of the grantor, for proof of either theory necessarily makes the grantees participants in the fraud. It is conceded that Schuster was insolvent at the time of the transfer; that Mrs. Ackhurst, who represented all the children, knew that fact at the time the deed was executed. It is agreed that the value of the property conveyed was $6,000. Now, if the court found that the transfer was fraudulent on the theory that the consideration

was partly a fictitious debt trumped up by Schuster and his children, then the acceptance of the deed by the grantees made them participants in the fraud of the grantor. Baldwin v. Short, 26 N. E. 928. It is well settled that if a portion of the consideration is fictitious, the conveyance is absolutely fraudulent and void as against the creditors of the grantor, because the grantee necessarily, by the acceptance of the conveyance, participates in the fraud of the grantor. Seger's Sons v. Thomas, 107 Mo. 644; Lumber Co. v. Mining Co., 78 Mo. App. 681; Freybe v. Treman, 13 S. W. 370; State ex rel v. Hope, 102 Mo. 430; Cordes v. Straszer, 8 Mo. App. 61; Imhoff v. McArthur, 146 Mo. 372; Keykendall v. McDonald, 15 Mo. 420; Lumber Co. v. Kahn, 71 Mo. App. 372; Barton v. Singleton, 128 Mo. 164. (2) If the transfer was fraudulent so far as Schuster's creditors are concerned, the property remained his. When the bank transferred its interest in the property to Mary Ackhurst, Ida Schuster and Lillie Schuster, the sole consideration paid to the bank for the transfer was August Schuster's property. None of the grantees of the bank paid for the conveyance to them with their own money or property. If they had paid for the bank's title with their own money or means, their title would have been good even though the conveyance by their father to them in the first instance had been fraudulent. But if they paid for it with property fraudulently transferred to them by their father, then their title is defeasible. Lillard v. Johnson, 148 Mo. 23. The principle is the same as if the property had belonged to the bank in the first instance and it conveyed to the children, the consideration being paid by the father. Where an insolvent debtor pays for property the title of which is taken in another, the grantee is a trustee for the debtor so far as creditors are concerned, and the property is subject to the payment of his debts. Bay v. Sullivan, 30 Mo. 191; McLaren v. Mead, 48 Mo. 115; Waite on Fraud. Conv. (3 Ed.), sec. 57, p. 107.

*Johnson, Rusk & Stringfellow* and *Booher & Williams* for respondents.

(1)   Not only must the grantor have a fraudulent intent, but such intent and purpose must be participated in by the grantees, and even if the grantee has knowledge of the fraudulent purpose of his grantor in making a transfer, still, if he is a creditor with a bona fide debt, he has the right to accept payment or security to the extent of his debt; and the courts will protect him in this right.   Crothers v. Busch, 152 Mo. 606; Milling Co. v. Burns, 152 Mo. 350; State to use v. Mason, 112 Mo. 374; Alberger v. Bank, 123 Mo. 313; Shelley v. Booth, 73 Mo. 74; Schomacker v. Ludington, 77 Mo. App. 415; Mapes v. Burns, 72 Mo. App. 411; Ross v. Ashton, 73 Mo. App. 254; Bank v. Russey, 74 Mo. App. 651.   (2) While it is true, as contended by appellant, that if a portion of the consideration was in fact fictitious, this would vitiate the transfer in toto, as being in fraud of the rights of creditors of the grantor, it is essential to the application of this rule that the grantees have knowledge that a portion of the alleged consideration is fictitious.   What vitiates a transfer of this kind in every case, is the knowledge and participation by the grantee in the fraud of the grantor.   This rule is recognized in Baldwin v. Short, 26 N. E. 928, cited by appellant, and by numerous decisions in this State and elsewhere, included in which are the cases cited by appellant.   Davis v. Schwartz, 155 U. S. 631; Smith v. Whitfield, 2 S. W. 822; Bump, Fraud. Con. (3 Ed.), pp. 44, 45; State to use v. Mason, 112 Mo. 381; Motley v. Sawyer, 38 Me. 68; Cravern v Miller, 65 Pa. St. 456; McFadden v. Mitchell, 54 Cal. 628; Becker v. Kendall, 66 Iowa 703; Kempner v. Churchill, 8 Wall. 369; Ames v. Gilmore, 59 Mo. 537; Cagney v. Cuson, 77 Ind. 494; Wood v. Harmison, 23 S. E. 560.   (3)   The fact that afterwards these children permitted the rents to be used to support the grantor as well as the dependent children who were among

the grantees, would not of itself have any effect upon the bona fides of the conveyance  The most that could be argued from this fact would be that it was evidence of an antecedent agreement or understanding, but all of the evidence is positively to the effect that there was no such agreement or understanding, and the circumstances of the case are corroborative of the direct and positive testimony on this point.

VALLIANT, J.—Plaintiff, a judgment creditor of defendant August Schuster, files this suit in equity to set aside two deeds made by her debtor to the other defendants, who are his children, on the ground that they were made to defraud his creditors in general and the plaintiff in particular.

The petition sets forth the plaintiff's judgment at law for $1,675, the insolvency of the judgment debtor, his ownership of the property, which consists of certain lots with improvements in the city of Savannah, the conveyance to the other defendants, his children, which it alleges was "without any consideration whatever" and for the purpose of placing the same beyond the reach of his creditors. The answer was a general denial. There was a decree for defendants dismissing the bill, and the plaintiff appeals.

The only statement in the petition as of a fact constituting the alleged fraud is that the insolvent debtor made the conveyance to his children "without any consideration whatever." The consideration for the deeds was the only point in dispute at the trial. It was agreed that the property conveyed was worth $6,000. It is conceded by appellant that at the date of the deeds, March 3, 1894, defendant, August Schuster owed his six children $4,087.83, but it is contended that one-sixth of that sum was owing to a daughter, Mrs. Smissen, who was not named in the deeds, or had previously been paid to her and that the amount then due the five children who were grantees in the deeds was only $3,406, which was about $2,600 less than the value of the property. The amount con-

ceded to be due was made up of $1,000 given by the children's grandfather to their father for them in 1885 and a legacy left them in their grandfather's will of which their father was executor, amounting to $1,749.28, and six per cent interest on these two sums. The testimony on the part of the defendants tended to show that in addition to those two sums the grandfather of these children had, as far back as 1860, 1862, and 1873, given to their father the sums of $150, $200, and $500 for them and that he agreed to hold it for them in trust, use it and pay them interest on it. The grandfather, Graff, had six children, and at the times he made these three last mentioned gifts he gave an exact equal amount to each of his other children, giving the several amounts to each of his other five children in person, but the share to defendants' mother, who was then living, was given to her husband, and the plaintiff contends that under the common law which was then in force the gifts of money to the wife into the hands of her husband made it his. Although the only testimony in the case as to the express terms on which these three sums were given is that of the defendant August Schuster himself (the grandfather of the children and their mother being now dead), and his testimony being that it was given him in trust for his children, the plaintiff contends that that statement is unworthy of belief in the face of the fact that when the several sums were thus given to the father of those children, their mother being then alive, their grandfather gave like sums direct to each of his other five children for their own immediate use. But for defendants the evidence shows that August Schuster at that time was a very prosperous business man, and his wife did not need the money as the others did, and that there was this reason for treating the gifts to her differently from those to the others.

The plaintiff at the trial was at a disadvantage from the fact that she had no evidence on the disputed points except what she was able to obtain from the defendants themselves,

some of whom she made her witnesses, but they being the children, and some of them unborn when some of the gifts were made, had really no personal knowledge of the facts, could only speak of family history or understanding. In their testimony they sometimes spoke of these three early gifts as gifts to their mother, but when their attention was drawn to the point, whether entirely ingenuous or not, they said that the understanding was that they were given to their father for their mother and her children.

The evidence showed that after the deeds in dispute were made August Schuster collected the rents and used them to live on and exercised control and management of the property as he did before. Against this it was shown that there was no understanding on this point between the old man and his children before the deeds were made, but that afterwards they allowed him to have the rents, which amounted to only about $40 a month, because he was old and incapable of doing any work and had nothing to live on, whereas they were able to take care of themselves.

The testimony of the defendants also tended to show that the oldest child of August Schuster, Mrs. Smissen, had been living in Texas ever since her marriage and that during the times when her father was a wealthy and prosperous business man he had given financial assistance to her and her husband, not as in payment of her share of the money due her from her grandfather's gifts, but of his own paternal care, and that in consequence of this fact she had waived her rights to the funds in question in favor of her sisters and brothers who had received nothing.

Plaintiff introduced testimony to show that soon after the deeds in question were made the Farmer's Bank of Savannah brought suit by attachment against August Schuster, attached this property, obtained judgment and bought the property under execution, and afterwards by agreement with the defendants permitted them to sell part of the property and apply

the proceeds amounting to about $1,500 to the payment of the debt for which the attachment had issued and then the bank deeded the rest of the property to three of the defendants. That was prior to the judgment obtained by the plaintiff in this case.

The chancellor found that August Schuster made the deeds with the fraudulent intent to place the property beyond the reach of his creditors, but that the other defendants, the grantees in the deeds, did not share in that purpose and on that finding dismissed the bill.

The fact that the defendants had to go back to 1860, 1862 and 1873 to bring up old gifts of small amounts which with the accumulation of interest for all those years were necessary to show an indebtedness equal to or exceeding the value of the property—gifts of which no separate account was kept and no separate investment made—presents a feature of the case that is not favorable to the defendants and was perhaps the fact that influenced the finding of the chancellor on the question of the intent of the grantor, and we can not disapprove that finding.

But the fact, independent of those old items, is, that Schuster did honestly owe his children a large proportion of the amount he claimed to have owed them, and, whatever his purpose may have been, there is nothing in the record to show that his children had any other purpose in view than satisfaction of the amount owing them. How much, if anything, over and above the $4,087.83, was due them they did not know beyond vague family history and from what their father said. If, therefore, in the transaction they received more value than they were entitled to, it could be called nothing worse than a mistake on their part and render them liable to the creditors of their father, if it all, only for the excess. If they received the deeds conscious that a portion of the debt was fictitious, they would be chargeable with the fraudulent

Vol 168 mo—20.

purpose and the whole transaction would be set aside. In such a case a court of equity would not uphold the deeds to the extent that they were supported by a valid consideration and condemn them only to the extent of the fictitious indebtedness. If the conduct of the grantees was tainted with fraud, the whole deeds would be set aside. ‣ [State ex rel. v. Hope, 102 Mo. 410.] But such is not the case. The fact that they allowed their father to use the rents for his own living is satisfactorily explained and the suspicion that would otherwise arise from that fact is removed.

The plaintiff's bill being shaped on the theory that the grantees were guilty of fraud and for that reason their deeds should be set aside, and the evidence not sustaining that view, the chancellor was justified in rendering the decree for the defendants, and we might well leave the case at this point. But as the plaintiff has gone farther and introduced in evidence the transactions with the Farmer's Bank of Savannah as bearing on the charge of fraud, we deem it proper to notice that branch of the case. The bank brought suit by attachment against the grantor in these deeds (the grantees not being parties to that suit), obtained judgment, caused the property in question to be sold under execution, and bought it in. If the theory of the plaintiff's petition is correct, that is, if the deeds from August Schuster to his children were fraudulent and void, then the property was subject to the attachment and sale at the suit of the bank and the bank acquired a good title, not only as against these defendants, but as against all creditors of Schuster, the plaintiff included. Then when the bank transferred the title to part of the property to the three daughters of Schuster, they got a good title. The argument is made by the plaintiff that since the consideration for the deed from the bank to the three daughters was the proceeds of the sale made by them of part of the property to one Limerick, it was the proceeds of property belonging to their father and therefore the deed from the bank to them enured

Gleitz v. Schuster.

to his benefit.   But that view of the case overlooks the fact that before the sale to Limerick the bank became the purchaser of all the property at the execution sale, and, on the plaintiff's theory of fraud, the title there acquired by the bank was all the title that Schuster had.   Therefore, when at the instance of the bank the three daughters made the deed to Limerick and paid the proceeds of the sale to the bank, they were not paying proceeds of property then belonging to their father, but of property, on the plaintiff's theory, belonging to the bank.   If the bank, after it had acquired the title, saw fit to recognize a claim in the children of Schuster under the deeds in question worthy of compromise, that is a matter that does not concern the plaintiff.   The bank's title was good if the statements in the plaintiff's petition were true, and it cut out the plaintiff as well as any other subsequent judgment creditor.   Taking from the property conveyed by the two deeds in suit from Schuster to his children, that part conveyed to Limerick, the proceeds of which went to the bank, it leaves the plaintiff's case deficient in proof to show that the value of the property remaining to them was in excess of the amount which it is conceded their father owed them.

The chancellor had the correct view of the case and the judgment is affirmed.

All concur.