# CASES DETERMINED

## BY THE

# SUPREME COURT

### OF THE

## STATE OF MISSOURI

#### AT THE

### APRIL TERM, 1898.

---

MANSUR–TEBBETTS IMPLEMENT COMPANY v. RITCHIE *et al.*, BRUTON, *Interpleader, Appellant.*

### Division One, April 20, 1898.

1. **Attachment:** PARTNERSHIP: MORTGAGE BY ONE PARTNER. One partner can not give a mortgage on the whole partnership property to secure the individual debt of himself or of another partner so long as there are partnership creditors who would thereby be deprived of the possibility of collecting their claims.

2. ———: ———: ———: INDIVIDUAL OR PARTNERSHIP CLAIMS: FRAUD. If a bank loans H. money to buy A.'s interest in a partnership, it has an individual claim against H. which it is entitled to have satisfied out of the partnership assets only after the partnership debts are paid. And a deed of trust to the bank by H., conveying all the partnership effects to secure the payment of such a loan, would, as against a third creditor of the partnership, be inoperative to convey the interest in the partnership bought by H. from A. And if the overdraft of R., the other partner at the time H. bought, for the payment of which H. gave his note at the bank, was a partnership matter, the bank would be a partnership creditor to the extent of the overdraft, notwithstanding the claim had taken the form of a note given by H. individually, unless a novation is proved. And a note and deed of trust for the overdraft given by H. transferring to the bank all the partnership property would be binding against such property, if not given and taken fraudulently to hinder and delay other partnership creditors. The evidence of this case is reviewed at length and the conclusion reached that the fraud was clearly established.

(587)

3. ———: DEED OF TRUST: PREFERRED CREDITOR: RELATIVES. A debtor may prefer one creditor over another, even though the preferred creditor be a relative of the debtor; but the kinship of the parties when taken with other circumstances of the case, may be material evidence in establishing fraud.

4. ———: ERRONEOUS INSTRUCTIONS: CURED BY OTHERS. It is not error to give an instruction, which, when taken by itself, is erroneous, if, when read in connection with others given, the law is correctly declared.

5. ———: HARMLESS ERROR. Where an erroneous instruction is invited by the pleading of the complaining party and relates to an immaterial matter and his rights could not have been prejudiced thereby, the error being harmless and the verdict against him and, under the evidence, clearly for the right party, the judgment will not be disturbed on appeal.

6. ———: FRAUD: BURDEN OF PROOF. The burden of proof in an attachment suit founded on fraud, is on him who charges it.

7. ———: ———: ———: CONFLICTING INSTRUCTIONS: HARMLESS ERROR. Where an instruction, given for the attaching creditor says "the burden of proof in this case rests on the interpleader" and an instruction given for the interpleader says that "fraud will not be presumed, but must be proved, and the burden of proving it rests on" the attaching creditor, the error is not harmless, the instructions being irreconcilably opposed to each other, and the judgment must be reversed on that account.

*Appeal from Chariton Circuit Court.*—HON. W. W. RUCKER, Judge.

REVERSED AND REMANDED.

*W. M. Williams* and *Webster Gordon* for appellant.

(1) The court erred in giving the first instruction on the part of the respondent. This instruction purports to cover the entire case and directs a verdict against the interpleader, if the jury should find a fraudulent intent on the part of the cashier of the bank in accepting the note indorsed to it. It wholly omits any requirement of a fraudulent purpose on the part of the grantor in the deed of trust or the beneficiary named

therein. *Distilling Co. v. Ellis*, 63 Mo. App. 17; *Parker v. Roberts*, 116 Mo. 657; *Van Raalte v. Harrington*, 101 Mo. 602; Bump on Fraud. Con. [3 Ed.] 27. (2) This instruction further declares that the bank was bound by any knowledge or notice that its cashier had. In order to affect the principal, it must be affirmatively shown that the knowledge or notice was acquired by the agent in the course of the business in which he was employed for his principal. *Sav. Ass'n v. Ptg. Co.*, 25 Mo. App. 642; *Bank v. Lovitt*, 114 Mo. 519; *Johnston v. Shortridge*, 93 Mo. 227; *Satterfield v. Malone*, 1 L. R. A. 35. (3) The fourth instruction directed the attention of the jury to an issue not material to the determination of the case, and declared that the possession of the interpleader, obtained without the consent of the grantor in the deed of trust, was unlawful and of no force or effect against the plaintiff in the attachment. This was repeated in different language, but to the same effect, in the eleventh instruction. These instructions were misleading and calculated to create a prejudice in the minds of the jury against the interpleader. *Hewitt v. Steele*, 118 Mo. 463; *Newell v. Bolt & Iron Co.*, 5 Mo. App. 253; *Donahoe v. Railroad*, 83 Mo. 560; *Doss v. Railroad*, 59 Mo. 27. (4) These instructions were erroneous, as well as being foreign to any issue properly before the jury. 1 Cob. on Chat. Mort., sec. 498; *Gaar v. Hurd*, 92 Ill. 315. (5) The court committed manifest error in giving the sixth instruction in reference to the burden of proof. Because: *First.* The verbiage of this instruction, even if it was otherwise correct in this case, has been frequently condemned by the appellate courts of this State. *Clark v. Kitchen*, 52 Mo. 316; *Carson v. Porter*, 22 Mo. App. 179; *State v. Heinze*, 45 Mo. App. 403; *Scott v. Allenbaugh*, 50 Mo. App. 130. *Second.* But the instruction ought not to have been given in this case, for the rea-

son that the burden of proof, upon the issue tried by the jury, and about which the court was instructing them for their guidance in determining that issue, was upon the respondent, the plaintiff in the attachment, and not upon the interpleader, as stated in the instruction. *Hazell v. Bank*, 95 Mo. 60; *State ex rel. v. Hope*, 102 Mo. 410; *Albert v. Besel*, 88 Mo. 150; *Stokes v. Burns*, 132 Mo. 214. *Third*. This instruction was not only erroneous, but prejudicial to the appellant. In a controversy of this character, an error in directing the jury as to the burden of proof is very material. (6) The seventh instruction wholly omits any fraudulent or improper intent on the part of S. P. Hudson, the beneficiary named in the deed of trust, and the party to whom the note secured thereby was given. If he accepted the note in good faith, in payment of an honest debt, due to him and with no design to assist the grantor in any fraudulent scheme, then said deed of trust was valid notwithstanding the jury may have found the facts stated in this instruction. *Van Raalte v. Harrington*, 101 Mo. 602; *Nat. Tube Works Co. v. Machine Co.*, 118 Mo. 365. (7) The court erred in giving the tenth and twelfth instructions on the part of the respondent. Both of these instructions authorize a verdict finding the deed of trust to be fraudulent, without requiring the jury to determine that there was any fraudulent intent on the part of either the grantor or the beneficiary named therein. *Hazell v. Bank*, 95 Mo. 60; *Shelley v. Boothe*, 73 Mo. 74; *State ex rel. v. Purcell*, 131 Mo. 312; *Baker v. Harvey*, 133 Mo. 653; *Singer v. Goldenburg*, 17 Mo. App. 549.

*George Robertson* for respondent.

(1) It will not be contended that the fraudulent intent of the grantee alone is sufficient to make the

instrument fraudulent. The fraudulent intent of the grantor must concur with that of the grantee. But the first instruction does not undertake to cover the whole case. It submits only the question of the grantee's intent. Nothing is better settled than that all of the instructions given in a case must be read together. All taken together, they compose the law applicable to the case. The omission of the grantor from this instruction is not irreconcilable with the other instructions given in the case. An omission in an instruction may be supplied by its insertion in another. *State v. Taylor*, 118 Mo. 153; *Crawford v. Doppler*, 120 Mo. 562; *Tenn. v. Railroad*, 135 Mo. 512. All the phases of the case are covered by proper instructions at the plaintiff's request. (2) The respondent complains further of this instruction on the point of the notice and knowledge of the bank's cashier. This instruction upon this point confines the cashier's notice and knowledge to "the whole transaction," thereby confining the attention of the jury to the transaction in question. Besides, there is no evidence in the case that J. S. Ritchie had any notice or knowledge of any of the fraudulent transactions of Ritchie and Hudson outside of those involved in this transaction under investigation in this trial. Nor is there any evidence in this case that J. S. Ritchie did any business with the defendants except as cashier of the bank. The bank is bound by any notice or knowledge its cashier had, coming to him within the sphere of his business as cashier. Wade on Notice, sec. 689; *Bank v. Lovitt*, 114 Mo. 519. (3) Appellant criticises plaintiff's instructions numbered 4 and 11. They relate solely to the interpleader's possession of the merchandise. That is an issue involved in the case. By reference to the interplea filed it will be seen that appellant in the lower court pleaded "a lawful posses-

sion of said property." If plaintiff's instructions numbered 4 and 11 are error, then the interpleader was the first to invite such error, and should not now be heard to complain of it. *Railroad v. Railroad*, 118 Mo. 599; *Bielman v. Railroad*, 50 Mo. App. 151; *Harper v. Morse*, 114 Mo. 317; *Singer v. Dickneite*, 51 Mo. App. 245. (4) The appellant complains of the instruction given at plaintiff's request that the burden is upon the interpleader. From the very nature of the proceeding the interpleader has the burden. He comes into court and asserts his claim to the property. It is as though it were a suit by him in replevin. Certainly the burden is upon the plaintiff in replevin to establish his claim to the property, and so it is upon an interpleader. The burden is upon the party asserting the affirmative of the issue. *Glover v. Henderson*, 120 Mo. 367. An interpleader must recover on the strength of his own case. *Toney v. Goodley*, 57 Mo. App. 235; *Boller v. Cohen*, 45 Mo. App. 97. The verbiage of this instruction is not faulty. *Scott v. Allenbaugh*, 50 Mo. App. 135; *Berry v. Wilson*, 64 Mo. 164; *Milling Co. v. Walsh*, 37 Mo. App. 567. (5) The purpose of the statement and letter of S. P. Hudson was to show that Hudson was a partner and not a creditor of J. J. Ritchie—that he was a debtor of this plaintiff—and thereby connect him directly with the fraudulent transactions complained of. This proof was directly in conflict with the interpleader's claim that the deed of trust was made in good faith by J. J. Ritchie to Hudson and by him assigned to the bank.

MARSHALL, J.—On the tenth of May, 1894, J. J. Ritchie executed and delivered to S. P. Hudson, a promissory note for $2,225.74, and secured it by a deed of trust, in the usual form, to Bruton as trustee for Hudson, covering a stock of merchandise in Sturgeon,

Missouri, which was properly recorded the same day. Hudson at once transferred the note and deed to the Sturgeon Savings Bank in payment and satisfaction of an indebtedness from him to the bank. On the eleventh of May, 1894, Bruton, the trustee, went to the store and found Mr. Owens, a clerk for Ritchie, in possession, who turned over the keys to the store to him, and he locked the doors and kept the keys.

On the twelfth of May, plaintiff began a suit by attachment in the Sturgeon common pleas court against Ritchie and Hudson, and seized and sold the goods covered by the mortgage. Thereafter Bruton filed an interplea in the attachment suit as trustee for the use and benefit of the Sturgeon Savings Bank, and claimed the proceeds of the property by virtue of the deed of trust. Plaintiff answered the interplea and averred that the deed of trust was a false and fraudulent conveyance and was made by Ritchie to hinder, delay and defraud his creditors, and that it was so designed by Ritchie and so received and accepted by Bruton and the bank, who each knew and understood said purpose and intent and actively helped, aided and assisted in making the same effective and operative. The reply of the interpleader was a general denial. At the return term plaintiff applied for a change of venue, alleging an undue influence of Bruton and the bank over the minds of the inhabitants of the territory embraced in the jurisdiction of the Sturgeon Court of Common Pleas, and also a like influence over the people of Boone, Audrain, Randolph and Howard counties. The interpleader objected, but the court granted the change of venue and sent the case to the circuit court of Chariton county, where it was tried, resulting in a verdict for the plaintiff, and the interpleader appealed.

For the interpleader evidence was introduced tending to show that prior to April, 1893, J. J. Ritchie and

J. W. Ratliff were partners; that about that time S. P. Hudson, a brother-in-law of J. J. Ritchie, purchased Ratliff's interest in the partnership, nominally for himself but really for the benefit of his brother-in-law. Hudson borrowed the money to make this purchase from the Sturgeon Savings bank, of which J. S. Ritchie, the father of J. J. Ritchie, was the cashier; that thereafter the business was run in the name of J. J. Ritchie; that afterward Hudson gave the bank his note for an overdraft the bank held against J. J. Ritchie; that on the tenth of May, 1894, J. J. Ritchie executed and delivered to S. P. Hudson the note for $2,225.74, payable one day after date, secured by deed of trust on the stock of merchandise, to cover the amount Hudson had paid to buy Ratliff's interest, and the note Hudson had given the bank to take up J. J. Ritchie's overdraft; that Hudson at once, on the same day, transferred the note and deed of trust to the bank and took up his notes which he had given the bank on the two occasions referred to. All of the transactions between Hudson and the bank were made with J. S. Ritchie, the cashier of the bank, and the father of J. J. Ritchie. The stock of goods was worth $2,593.05.

For the plaintiff in the attachment suit evidence was introduced showing that on the nineteenth of October, 1893, a statement of assets and liabilities was made to plaintiff "by the firm of J. J. Ritchie, city of Sturgeon, State of Missouri, which is composed of the following persons:   J. J. Ritchie and S. P. Hudson, co-partnership unlimited, and engaged in the business of hardware and implements," showing that the assets exceeded the liabilities $12,300, which was signed only by J. J. Ritchie, and which recited that it "is presented as a basis of credit with Mansur-Tebbetts Implement Company;" that on the first of November, 1893, plaintiff wrote Ritchie calling his attention to the fact

that the statement made it appear that Hudson was a
partner but that he had not signed the statement,
inclosed him a copy of it and asked him to have Hud-
son sign it; that on the twenty-third of November,
1893, Hudson wrote plaintiff acknowledging receipt of
the letter of the first of November to Ritchie, concern-
ing the statement, and also of an order blank contain-
ing goods selected by Ritchie, aggregating over $1,900,
and objecting to the terms of the sale because they
gave plaintiff the right to ship the goods at any time,
whereas, "we can not arrange to take care of them
before January 20, 1894," and also because it gave no
right to cut down the amount of the order if after
checking up on the first of January their financial con-
dition required it, and saying: "While *we* desire to
handle your goods we do not want to purchase more
than we can pay for, as this would make it unpleasant
for all parties concerned. While we may find it to our
interest to handle all goods selected in the order blank
and even more, yet it is unfair at this early date to tie
ourselves up for such an order as this." And further
adding: "For the above reasons I respectfully decline
to sign the attached statement unless the privilege is
granted to reduce the order to suit the conditions of
our financial circumstances January 1st, 1894, and to
have shipment deferred as late as January 20th, 1894."
It further appeared for plaintiff that the plaintiff ac-
ceded to the qualifications in the order suggested by
Hudson and the goods were shipped about the twentieth
of January, 1894, and that J. J. Ritchie gave plaintiff
five notes, in settlement of the order, one dated March
10, 1894, for $153, and four dated March 31, 1894, for
$445.04, $450, $700 and $600, respectively, and
that the attachment suit was based on them. It
further appeared that both Ritchie and Hudson were
largely indebted at the time the deed of trust was exe-

cuted. The contention of the interpleader at the trial was that Ritchie owed Hudson and Hudson, owed the bank the same amount Ritchie owed him, in fact it was the same debt; that to secure himself Hudson took the note and deed of trust from Ritchie, and immediately transferred it to the bank, taking up his notes from the bank; that although Ritchie was in failing circumstances, if not absolutely insolvent, he had the right to prefer Hudson even though the deed of trust covered the whole of his property, as it substantially did in this case. For the plaintiff it was maintained that J. J. Ritchie and S. P. Hudson were partners doing business under the firm name of J. J. Ritchie, that the partnership was insolvent, and that the note and deed of trust from Ritchie to Hudson were fraudulent and intended to hinder, delay and defraud the creditors of the firm.

At the request of the *interpleader* the court *gave* the following instructions:

1. The court instructs the jury that if they believe from the evidence that J. J. Ritchie was on the tenth day of May, 1894, indebted to S. P. Hudson on a *bona fide* claim for the sum of $2,225.74 for money advanced by said Hudson to said Ritchie, then the said Ritchie had a legal right to execute a deed of trust to F. E. Bruton, as trustee, on the property and stock of goods in question to secure said debt, and if the jury believe that said Bruton, as trustee in said deed of trust, was in possession of said property at the time of the levy with the consent of said Ritchie, grantor in said deed of trust, and that said deed of trust was executed to said Bruton by said Ritchie in good faith to secure a *bona fide* debt, in said deed of trust described, and that said deed of trust was recorded before the attachment writ in this case was issued or levied upon said property, and that said Hudson for an adequate and valuable

consideration sold and assigned said claim secured by said deed of trust to the Sturgeon Savings Bank, then the finding of the jury should be for the interpleader.

3. The jury are instructed that fraud will not be presumed, but must be proved, and the burden of proving it rests on the party alleging it—the plaintiff herein—and while such proof need not be by direct or positive evidence, but may be by facts and circumstances, yet if the jury believe from the evidence that all the facts and circumstances in the evidence agree as well with honesty and fair dealing. as with dishonesty, you should find the deed of trust executed by J. J. Ritchie to F. E. Bruton for the use of S. P. Hudson to be valid, and your verdict should be for the interpleader.

4. If the jury believe that J. S. Ritchie for the bank, in good faith accepted the debt and deed of trust from J. J. Ritchie to S. P. Hudson, for a valuable consideration, any fraud upon the part of said J. J. Ritchie against other creditors could not defeat the interplea, unless participated in by said bank or its officers.

5. Plaintiffs seek in this case to establish a partnership between the defendant and J. J. Ritchie and S. P. Hudson.

The court instructs the jury that before they can find that any such partnership existed, they must first find from the evidence either that there was a contract of partnership between said defendants or that said Hudson held himself out as a partner or that he was held out as a partner with his knowledge and consent, and the act of holding out was known to the Mansur-Tebbetts Implement Company, plaintiff, and they must have been misled thereby in giving credit to the defendant, J. J. Ritchie.

The *interpleader asked* the court to instruct as follows:

"2.   The court instructs the jury that if you believe from the evidence that the defendant, J. J. Ritchie, was justly indebted to S. P. Hudson and made the conveyance of his stock of goods, fixtures, etc., stored in the Mayer building and warehouse in the city of Sturgeon, Boone county, Missouri, to F. E. Bruton, trustee and interpleader herein, for the use and benefit of S. P. Hudson, with the *bona fide* intention of preferring him to the exclusion of other creditors, then he had a right under the law to make such preference, and said Hudson had a right to accept said preference and receive said conveyance as security for his debt, and such transfer and conveyance, if taken and accepted by said Hudson in good faith for the purpose of securing such debt due him, and without any purpose on his part to aid or assist said J. J. Ritchie to defraud his creditors, is not fraudulent, or made to hinder, delay and defraud creditors, although it may have included the entire stock of said J. J. Ritchie, and although all the other creditors of said Ritchie may have been left unpaid by reason of such transfer and conveyance, and although said Ritchie may have been insolvent at the time of said transfer and conveyance, to the knowledge of said Hudson." The court *refused* to give the instruction as asked, but *modified* it by adding to the end of it the words:  "If taken and accepted by said Hudson in good faith for the purpose of securing such debt due him and without any purpose on his part to aid or assist said J. J. Ritchie to defraud his creditors," and gave it as modified.

At the request of *plaintiff* the court instructed the jury as follows:

1.   The court instructs the jury that the beneficial party to this interplea is the Sturgeon Savings Bank,

and that the witness, J. S. Ritchie, is the cashier of said bank and that the bank is bound by any knowledge or notice that said Ritchie had, and further, that said bank is bound by the intention and purpose of said J. S. Ritchie in taking and accepting the note and mortgage offered in evidence as well as the purpose and intention of J. S. Ritchie, throughout the whole transaction, and if the said purpose and intention of the said J. S. Ritchie was fraudulent, then the bank is bound by said intention, and your finding should be against F. E. Bruton, the interpleader herein, even though the interpleader, Bruton, may have acted in good faith in all he did.

2.   The court instructs the jury that although the jury believe that interpleader, F. E. Bruton, did on the eleventh day of May, 1894, at the request of the witness, J. S. Ritchie, take possession of the goods in controversy by securing the keys from the clerk, Owens, and having the doors locked and the business suspended, they will find such possession to be unlawful and of no force and effect against the Mansur-Tebbetts Implement Company unless they further find from the evidence that J. J. Ritchie, the grantor, authorized said Owens to turn over the keys and possession thereof to the said Bruton or consented thereto.

5.   The court instructs the jury on the question of *partnership* as follows:

*First.*   If the jury believe from the evidence that J. J. Ritchie and S. P. Hudson at or about the time of the sale of J. W. Ratliff's interest in the stock of goods, agreed between themselves to be and become partners in said business, then both Hudson and Ritchie are liable to the Mansur-Tebbetts Implement Company for the debt sued for in the attachment proceeding.

*Second.* The Mansur-Tebbetts Implement Company in this trial does not have to prove that J. J. Ritchie and S. P. Hudson agreed to and did form a partnership in fact, but if said Hudson held himself out as a partner of said Ritchie, or knowingly permitted said Ritchie to hold him, Hudson, out as his partner to the said Mansur-Tebbetts Implement Company, and the said company shipped the goods relying on said representation, and the goods were accepted by said Ritchie, and the notes in suit given therefor, then said Hudson is liable to said company for said goods.

6. The court instructs the jury that the burden of proof in this case rests upon the interpleader to show his right to recover by a preponderance of evidence to the reasonable satisfaction of the jury.

7. The jury are instructed that direct and positive evidence is not required to establish or prove fraud, but it may be gathered and inferred from all the facts and circumstances in the case; and if the jury believe from all the facts and circumstances in evidence in this case that J. J. Ritchie gave the note and deed of trust read in evidence to S. P. Hudson with the intent to hinder or delay his creditors and that said J. S. Ritchie, cashier of the Sturgeon Savings Bank, the assignee and beneficiary in the said deed of trust, had knowledge of such fraudulent intent and aided or in any manner abetted and assisted him in carrying out said fraudulent intent, then your verdict must be for the Mansur-Tebbetts Implement Company, the defendants in the interplea.

8. The court instructs the jury that fraud vitiates all transactions, and although the jury may believe that J. J. Ritchie was indebted to S. P. Hudson in the amount of the note secured by the deed of trust of May 10, 1894, and that said Hudson was likewise

indebted in a like sum to the Sturgeon Savings Bank, to which he assigned said note, yet if from the evidence the jury believe that the purpose of said J. J. Ritchie and S. P. Hudson and J. S. Ritchie, as cashier of said Sturgeon Savings Bank in said transaction, was to hinder and delay the creditors of said J. J. Ritchie or of said Ritchie and Hudson, then the interpleader can not recover in this action.

9. The court instructs the jury that they, the jury, are the sole judges of the weight of the evidence and the credibility of the witnesses, and if from the evidence the jury believes that any witness has wilfully sworn falsely to any material fact, the jury are at liberty to disregard the whole testimony of any such witness.

10. The court instructs the jury that if from the evidence the jury believes that in accepting the note and deed of trust of May 10, 1894, the witness J. S. Ritchie purposed and intended to aid J. J. Ritchie or said Ritchie or Hudson, or either of them, in hindering or delaying their creditors or the creditors of either of them, then the interpleader can not recover in this action; and this, too, although said J. J. Ritchie was indebted to Hudson in the amount of said note and said Hudson was likewise indebted to the Sturgeon Savings Bank in like amount.

11. The court instructs the jury that the note secured by the deed of trust of May 10, 1894, was not due until May 14, 1894, and that under the terms of said deed of trust the trustee and interpleader had no right to the possession of the property described therein without the consent of said J. J. Ritchie, and could only sell the same on the maturity of said debt and default in the payment thereof, and unless the jury believes from the evidence that J. J. Ritchie, the grantor in said deed of trust voluntarily delivered to

F. E. Bruton possession of the goods in question, then possession or attempted possession of said goods taken by said F. E. Bruton prior to May 12, 1894, the time of the levy of the attachment, was unlawful and can not affect the rights of the Mansur-Tebbetts Implement Company, the defendants in the interplea, nor authorize a recovery by the interpleader.

12.   The court instructs the jury that even if they believe from the evidence that the Sturgeon Savings Bank took an assignment of the deed of trust read in evidence upon the stock of goods of J. J. Ritchie to secure the payment of a debt actually owing to them; yet if they also believe from the evidence that the Sturgeon Savings Bank, or J. S. Ritchie, its cashier, intended, in taking said deed of trust not only to secure their own debt, but also to assist J. J. Ritchie or Ritchie and Hudson, or either of them, and did assist them or either of them in hindering, delaying, or defrauding any of their other creditors, the jury must find for the Mansur-Tebbetts Implement Company, defendants in this interplea.

13.   If from the evidence the jury believe that at the time of the execution and delivery of the note and deed of trust, May the 10, 1894, from J. J. Ritchie to S. P. Hudson, the said Ritchie was not indebted to the said Hudson, and that John S. Ritchie knew that said J. J. Ritchie was not indebted to and did not owe Hudson, then the verdict must be for the Mansur-Tebbetts Implement Company.

The giving of instructions numbered 1, 4, 6, 7, 10 and 12, for plaintiff is assigned as error by the interpleader.

I.   The first instruction given for plaintiff is objected to because the jury is not required to find that there was a fraudulent intent on the part of the debtor, but that the jury was authorized to find for the plain-

tiff if the fraudulent purpose was entertained by the bank alone when it accepted the note and deed of trust.

So much of the instruction as relates to the Sturgeon Savings Bank being the beneficial party to the interplea, is fully justified by the facts in the case. The bank was composed almost if not wholly of the Ritchie family. W. H. Ritchie was president, J. S. Ritchie was cashier, and they, with their three sisters and the children of a fourth sister, were substantially the bank. The president and cashier managed the bank. J. J. Ritchie is a son of the cashier, and he married a sister of S. P. Hudson. When Hudson bought out the interest of Ratliff in the partnership composed of him and J. J. Ritchie, Hudson borrowed the money from the bank, dealing with J. S. Ritchie in the transaction, and when Hudson gave his note to the bank for the overdraft of J. J. Ritchie, the transaction was had with J. S. Ritchie the cashier. When J. J. Ritchie became involved, he and his father went to Columbia, on the tenth of May, to have the note and deed of trust drawn up. Hudson, whose interests are claimed to have been protected by the transaction, did not go. When the papers were drawn up they were indorsed by Hudson to the bank and delivered to it, and his notes for the money borrowed to buy out Ratliff and to cover J. J. Ritchie's overdraft were returned to him. It would thus appear that it was the bank and not Hudson that was trying to get security. Whether the purchase of the Ratliff interest by Hudson was intended to and did result in a partnership between Hudson and J. J. Ritchie (and the subsequent facts, as for instance, the statement of Ritchie to the plaintiffs on the nineteenth of October, 1893, that Hudson was a partner in the firm, and the letter of Hudson to plaintiffs on the twenty-third of November 1893, give strong color to this theory), or whether Hudson was simply used by

J. J. Ritchie in his dealings with the bank to get the money from it to buy out his partner and to cover up his own overdraft, and to secure the bank by making this note and deed of trust to Hudson and have Hudson indorse it to the bank, is not very material in this case. If Hudson was a partner of J. J. Ritchie, and the latter was not indebted to the bank for the money it loaned to Hudson to buy out Ratliff, then Ritchie had no right to give a mortgage on the whole partnership property to secure the individual debt of only one of the partners, when there were partnership creditors who would thereby be deprived of the possibility of collecting their claims. *Priest v. Chouteau*, 85 Mo. 398. If the bank loaned Hudson the money to buy out Ratliff's interest, it had an individual claim against Hudson, which it was entitled to have satisfied out of the partnership assets only after the partnership debts were paid, and if Ritchie's overdraft, for which Hudson gave his note to the bank, was a partnership matter, the bank would be a partnership creditor to that extent, notwithstanding the claim had taken the form of a note given by Hudson individually instead of standing on the books of the bank as an overdraft of the firm, unless, of course, a novation could be proved, and in view of the admitted insolvency of both Hudson and J. J. Ritchie this is scarcely a plausible theory.

In the first contingency, this note and deed of trust, would, as against this partnership creditor, be ineffective to the extent that it included Hudson's individual debt to the bank (the evidence does not clearly show that amount) and it would be good to the extent that it represents the overdraft (the amount of which is not shown).

In the second aspect of the case the whole debt would be J. J. Ritchie's, the whole property his, Hudson a mere intermediary between Ritchie and the bank,

and the note and deed of trust valid, unless it was given and taken fraudulently to hinder and delay the other creditors, and not merely in good faith as a preference to the bank.

There is no longer any doubt in this State that a debtor may prefer one creditor over another, even though the preferred creditor be a relative of the debtor, but as was said by BLACK, J., when speaking of a somewhat analogous matter, in *Van Raalte v. Harrington,* 101 Mo. 608, "Lederer, it is true, had a right to prefer some creditors to others, and the fact that his sons were made preferred creditors does not, of itself, furnish evidence of fraud; but the relationship is a fact to be considered with the other circumstances. Sons and sons-in-law figure at every turn of the evidence. The great effort on the part of the vendor seems to have been to get enough out of his property to pay off these favored persons, and there is some ground for making the deduction that the late purchases made by Lederer on time were made with a fixed purpose of never paying for the goods so purchased. In our opinion there is evidence of an intended fraud on the part of Lederer." In this case the relationship between the parties to the deed of trust may not, of itself, furnish evidence of fraud, but when considered in connection with the other circumstances in the case, fully justifies the verdict of the jury. In April, 1893, Hudson borrowed the money from the bank and bought out the interest of Ratliff, and afterward gave his note to the bank for Ritchie's overdraft. It is not disclosed when these notes would fall due. In October, 1893, Ritchie, for the purpose of obtaining credit from plaintiff, represented that he and Hudson were partners doing business under the firm name of J. J. Ritchie and that the firm assets exceeded its liabilities $12,300. Hudson knew of this representation and that he had

been held out by Ritchie as a partner, for on the twenty-third of November, 1893, he wrote plaintiff acknowledging having seen a copy of the statement and representation, and employed such terms in speaking of the business as clearly to represent that he was a partner.

About the twentieth of January, 1894, the plaintiff shipped J. J. Ritchie goods amounting to $2,348.04, and in March, 1894, Ritchie gave notes for that amount. It is not stated when these notes fell due. On the tenth of May, 1894, the note for $2,225.74 secured by a deed of trust was given, and the deed covered some of the same property sold by plaintiff to Ritchie. The note was payable one day after date and the deed of trust gave the trustee power to take possession only in the event the note was not paid at maturity. It is in no sense a trade mortgage. The note therefore would not fall due until the fourteenth of May, and the trustee had no right to take possession until after that date. Yet he did take possession on the next day (May 11) after the deed was made, doing so, as he says, by Ritchie's consent. The property realized $2,593.05. Thus the effect of these transactions was to secure to the bank an old claim of $2,225.74 which had been outstanding since April, 1893, by giving it a mortgage on a stock of goods worth $2,593.05, of which $2,348.04 had been purchased from plaintiff within ninety days prior thereto and no part of the purchase price had been paid. Under these circumstances the language of BLACK, J., *supra*, is appropriate: "The great effort on the part of the vendor" (here the mortgagor) "seems to have been to get enough out of his property" (here to get enough property on credit) "to pay off these favored persons, and there is some ground for making the deduction that the late purchases made by Lederer" (here J. J. Ritchie) "on time were made with a

fixed purpose of never paying for the goods so purchased.''

It is in the light of these facts and circumstances that we must consider the instructions given and refused by the court.

Taken singly the first instruction given for plaintiff would be clearly erroneous. But when read in connection with all the other instructions given, particularly the seventh, eighth and tenth given for plaintiff, and the first and fourth instruction given for the interpleader, there is no error in it. *State ex rel. v. Hope*, 102 Mo. 426; *Ridenhour v. Railroad, Ib.*, 270; *Dickson v. Railroad*, 104 Mo. 491; *O' Connell v. Railroad*, 106 Mo. 482. These instructions read together, fully and fairly require the jury to find that there was a fraudulent intent and purpose to hinder, delay and defraud the creditors on the part of J. J. Ritchie, S. P. Hudson and the bank, acting through J. S. Ritchie. This requirement was made plainer by the first and second instructions given for the interpleader, which put the converse of fraud to the jury and required them to find for the interpleader if the note and deed of trust were given in good faith to secure a *bona fide* debt from Ritchie to Hudson and were transferred by Hudson to the bank in like good faith to secure a like valid debt, and were intended to create a preference in Hudson over the other creditors of J. J. Ritchie.

In view of the almost conclusive character of the evidence that Ritchie and Hudson were partners, and that a large, if not the major part, of the note and deed of trust, represented in no sense a debt from Ritchie to Hudson, but stood for the individual debt of Hudson to the bank for the money borrowed to buy Ratliff's interest in the firm, and the character of the transaction by which a part, at least, of the goods covered by the mortgage, was acquired, it is almost beyond con-

ception that the jury could have rendered any other verdict in the case or that they could have been misled by the instructions given on this branch of the case.

It is further contended, however, that the first instruction given for plaintiff is erroneous because it did not limit the knowledge of J. S. Ritchie to such as he acquired in the transaction of the business of the bank.

Ritchie, the cashier, distinctly stated that neither his son, J. J. Ritchie, nor Hudson, owed him anything personally. The money they got from him was the bank's money. The dealings he had with them were the bank's business. It does not appear that he had any other knowledge of their affairs or intentions than such as he got in a business way while acting as an officer of the bank. In fact he was very scrupulously exact in keeping his individuality and his official character distinct. The knowledge of Ritchie spoken of in the first instruction is therefore clearly the knowledge he, as an officer of the bank, had acquired while transacting its business.

II. The fourth and eleventh instructions given for plaintiff are complained of, because they told the jury that it was unlawful for the trustee under the deed of trust to take possession of the property before the maturity and default in the payment of the note, without the consent of the grantor, and that such possession was of no force and effect as against plaintiff.

It is ordinarily true that until condition broken the mortgagor is entitled to remain in possession of the mortgaged property. *Kennedy v. Dodson*, 44 Mo. App. 552; *Brown v. Hawkins*, 54 Mo. App. 75. The condition of this deed of trust would not have been broken until after the fourteenth of May. The rights of the interpleader would have been effectually protected by the recorded deed of trust as well without as

with possession. But the interplea asserts that the trustee took possession on the twelfth of May, before condition broken, with the consent of the grantor, and the evidence clearly shows that he consented. This was an immaterial issue tendered by the interpleader, and he can not be heard to complain that instructions based upon such an issue were given by the court. Instructions should not be given on mere abstract propositions of law, where there is nothing in the pleadings or evidence to predicate them on. In this case the issue was tendered by the interpleader and he introduced evidence to sustain his allegations in this respect. The instructions could not have done the interpleader any harm before the jury, because it was very clear from the evidence that J. J. Ritchie consented to the trustee taking possession, for he knew the fact and saw the physical evidence that the trustee was in possession and never objected. The only purpose that could have been subserved in taking possession was to stop the current sales of the mortgaged property, and neither of the parties to this controversy could possibly have been damaged by that.

Whilst the instructions related to an immaterial issue, it does not follow that the party raising the issue can object. Under the facts in this case we can not see how the interpleader's rights have been prejudiced and the error being harmless and the verdict for the right party, and the only one the jury, on the evidence, could have properly returned, the verdict should not for this reason be disturbed. *Otto v. Bent*, 48 Mo. 23; *Keen v. Schnedler*, 92 Mo. 516; *Fitzgerald v. Barker*, 96 Mo. 661; *Bushey v. Glenn*, 107 Mo. 331; *Macfarland v. Heim*, 127 Mo. 327; *Greer v. Bank*, 128 Mo. *loc. cit.* 575; *Brobst v. Brock*, 10 Wall. 519.

The parties seem to have had an idea that the proposition that defects in a mortgage, valid between the

parties but invalid as to the mortgagor's creditors, might be cured by the mortgagee taking possession before the mortgagor's creditors acquired rights to the property (*Wood v. Hall*, 23 Mo. App. 110; Jones on Chat. Mort., sec. 177), had some application to this case, but that doctrine is inapplicable to the facts presented by this case.

III. The objection urged to the seventh, tenth and twelfth instructions is that they do not require the jury to find a fraudulent intent on the part of Hudson.

What has been said with respect to the first instruction applies equally to these. The eighth instruction given for plaintiffs requires the jury to find from the evidence, "that the purpose of said J. J. Ritchie and S. P. Hudson and J. S. Ritchie, as cashier of said Sturgeon Savings Bank in said transaction, was to hinder and delay the creditors of said J. J. Ritchie or of said Ritchie and Hudson." This fills whatever gap was left in the instructions complained of as to the necessity of finding a fraudulent intent in Hudson.

IV. The sixth instruction given for the plaintiff was: "The court instructs the jury that the burden of proof in this case rests upon the interpleader to show his right to recover by a preponderance of evidence to the reasonable satisfaction of the jury." At the request of interpleader the court instructed the jury as follows: "The jury are instructed that fraud will not be presumed, but must be proved, and the burden of proving it rests on the party alleging it—the plaintiff herein—and while such proof need not be by direct or positive evidence, but may be by facts and circumstances, yet if the jury believe from the evidence that all the facts and circumstances in the evidence agree as well with honesty and fair dealing, as with dishonesty, you should find the deed of trust executed by J. J.

Ritchie to F. E. Bruton for the use of S. P. Hudson to be valid and your verdict should be for the interpleader.''

The interplea set up the note and deed of trust. The plaintiff's answer to the interplea was in the nature of a plea of confession and avoidance—confession of the note and deed of trust, and avoidance of the force and effect thereof, because of the fraud upon the plaintiff perpetrated by their utterance and execution. The plaintiff's answer having admitted all the interplea claimed, there was nothing for the interpleader to prove. He was entitled to a judgment unless the plaintiff proved his title fraudulent. The burden of proof was therefore upon the plaintiff to establish the fraud. No obligation rested upon the interpleader except to repel the force of the plaintiff's attack. This is and has long been the law in this State. In *Albert v. Besel*, 88 Mo. *loc. cit.* 153, BLACK, J., said: ''The first instruction given for the plaintiff placed the burden of proof upon the interpleaders to show that the sale to them was made in good faith and without any intent to defraud the creditors of Besel. The bill of sale is regular on its face. Interpleaders were in possession of the property when the writ of attachment was levied; the plaintiff seeks to show that the sale was fraudulent, and, therefore, void as to him. The burden of proof was upon him to show that the transaction was in fact fraudulent, and the instructions should not have been given. *Gutzweiler's Adm'r, v. Lackmann*, 39 Mo. 91. It makes no difference in this respect that the interpleaders in their interplea say the sale was in good faith.'' If this had been written for the case before us, it could not have fitted the facts more closely. This case was followed in *Hazell v. Bank*, 95 Mo. 65, and NORTON, J., in speaking of the action of the trial court in granting the attaching

creditor the opening and closing of the case, where the contest was upon an interplea founded upon an assignment and an answer of the attaching creditor charging fraud in the same, and which ruling the interpleader assigned as error, said: "We see no just ground of complaint to this ruling, since the answer was in the nature of confession and avoidance. It admits the assignment, but alleged it to be fraudulent and void, and the burden of proving which was on the shoulders of the party averring it." In *State ex rel. v. Hope*, 102 Mo. 428, the contest was between a vendee of a stock of goods and an attaching creditor of the vendor. The transfer was admitted by the attaching creditor but it was charged by him that the sale was fraudulent as to creditors, and BRACE, J., said: "Upon him who charges fraud rests the burden of proof." In *Van Raalte v. Harrington*, 101 Mo. *loc. cit.* 611, BLACK, J., adopts the language of the court in *Knower v. Clothing Co.*, 57 Conn. 202, where it was said: "We have made these references to the decisions of this court for the purpose of showing that in all cases where the title of a vendee has been attacked, because of the intent on the part of the vendor to defraud his creditors by the transfer, those making the attack have been required to assume the burden of proving that the vendee had actual knowledge of, and participated in the fraud."

The sixth instruction given for plaintiff was clearly erroneous. The third instruction given for the interpleader contained a correct statement of the law in this State. The two instructions are irreconcilable. They are antitheses. They left the jury in such position that if they attempted to follow the plaintiff's instruction they would have to violate the instruction given for the interpleader, and *vice versa*. Instructions are given as a guide to the jury. They should be so drawn that a layman could understand them, for jurors are

laymen.   Nothing should be left to interpretation as to the meaning of the court or the duty of the jury. Irreconcilable and contradictory instructions are necessarily confusing to the jury, and invariably breed error.   It can not be said this is harmless error.   We are not able to say which instruction the jury followed and which it disregarded.   The verdict does not disclose which instruction was disobeyed.   The jury may have thought that the interpleader had not shown his right by a preponderance of the evidence, and hence found for the plaintiff.

It produced the result which naturally flows from error of law in the trial of a cause, the verdict can not stand, and the judgment must be reversed and the cause remanded for a new trial.   It is so ordered.   All the judges of this division concur.

Opinion modified so as to show that WILLIAMS, J., having been of counsel, did not sit in the determination of this cause, thereupon motion for rehearing · overruled.