SAMUEL G. STAHLHUTH, Appellant, v. PIERRE
NAGLE et al.

Division Two, June 30, 1910.

1. **FRAUDULENT CONVEYANCE:** Burden of Proof. Where
plaintiff charges that the note was fictitious and the deed of
trust and notes were fraudulent and without consideration, the
burden is on him to prove the fraud.

Stahlhuth v. Nagle.

2. ——: **Preferred Creditor: Brother.** A debtor in failing cir-
cumstances may prefer one creditor over another, even though
the preferred creditor be the debtor's bachelor brother, living in
the same house, and helping him at times in the support of his
family; and even though the effect of the preference is to delay
other creditors, yet if the deed of trust and note were to secure
the payment of a valid indebtedness due the brother, amount-
ing to no more than what he actually owed him, they will not
be set aside at the suit of such other creditors.

3. **DEED OF TRUST: Delivery.** The recording of a deed of trust
and then placing it in the hands of another to be delivered to
the *cestui qui trust*, especially where the latter is told by the
maker that it is in the hands of the depositary for him, is a
constructive delivery, at the least.

Appeal from St. Louis City Circuit Court.—*Hon.
Moses N. Sale*, Judge.

AFFIRMED.

*McCorkle & Webster* for appellant.

(1) In equity cases the judgment of the trial
court will be accorded all proper consideration, but
as the ultimate responsibility for the judgment rests
on the appellate court, when the case is appealed, that
court is not bound by the findings of fact by the trial
court, but will review the evidence and render such
judgment as good conscience dictates. Hoeller v.
Haffner, 155 Mo. 589; Bank v. Fry, 115 S. W. 439;
Guinan v. Jarrott, 183 Mo. 204. (2) Where a person
makes a voluntary conveyance of land, or some in-
terest therein, to another, without consideration or for
inadequate consideration, with the fraudulent intent
to defraud, hinder or delay his creditors, the law
raises a resulting trust in favor of his creditors, and
they may set aside such conveyance by a suit in
equity. White v. McPheeters, 75 Mo. 286; Stanton v.
Boschert, 104 Mo. 393; Ryland v. Callison, 54 Mo. 513;
Grentry v. Robinson, 55 Mo. 260. (3) Where anyone
is indebted to another, he has a legal right to prefer

him over his other creditors, even though such prefer-
ence may have the effect of hindering and delaying the
claims of other creditors; but if in such a case it
further appears from all the circumstances attending
the transaction that the preferred creditor is not act-
ing from an honest purpose to secure the payment
of his own debt, but from a desire to aid the debtor in
defeating other creditors, or in covering up his prop-
erty, or in giving him a secret interest therein, or in
locking it up for the debtor's own use and benefit, he
will not be protected, and the conveyance to him as
a pretended preference will be fraudulent as to the
other creditors of his vendor. Huffmann v. Nixon,
152 Mo. 303; Marble Co. v. Achuff, 83 Mo. App. 42;
Klauber v. Schloss, 198 Mo. 502; Martin v. Estes, 132
Mo. 402; Riley v. Vaughan, 116 Mo. 169; Buckingham
v. Tyler, 74 Mich. 101; Shelley v. Boothe, 73 Mo. 74.
(4) The relationship of the parties, the indebted con-
dition of Pierre, the unsatisfactory evidence of con-
sideration, other similar deals indicating fraud par-
ticipated in by Richard Nagle, the indifference of
Richard to, and his ignorance of, this deed of trust,
form such a combination of suspicious circumstances
as shifts to defendants the burden of making a very
full and clear showing of good faith and honest pur-
pose. Farwell v. Meyer, 67 Mo. App. 574; Boldt v.
Bank, 59 Neb. 283; Mitchell v. Eure, 126 N. C. 77;
Moore v. Gainer, 53 W. Va. 403; Pruyn v. Young, 51
La. Ann. 320; Marcus v. Leake, 94 N. W. 100. (5)
Placing a deed in the hands of a third person is not
a good delivery unless the grantor parts with his do-
minion over it. Ells v. Railroad, 40 Mo. App. 185;
Johnson v. Farley, 45 N. H. 505; Porter v. Woodhouse,
59 Conn. 568; Alsop v. Swathel, 7 Conn. 500; Mudd
v. Dillon, 166 Mo. 110; Hammerslough v. Cheatham,
84 Mo. 13; Henry v. Henry, 65 Mo. 689; Vanstone v.
Goodwin, 42 Mo. App. 39. (6) The same rule ap-
plies where the grantor keeps it in his own possession

or under his own control. Weber v. Christen, 121
Ill. 91; McGraw v. McGraw, 79 Me. 257; Steven v.
Castel, 63 Mich. 111; Metcalfe v. Brandon, 60 Miss.
685. (7) Richard, by taking no note, or security, or
any step to assert his rights for nine years, and thus
permitting persons to extend credit to Pierre upon
faith that he was solvent and able to pay, is now es-
topped to come in and assert his debt and receive a
preference, to the exclusion of those whose claims
have been based on his apparent solvent condition and
good standing. Riley v. Vaughan, 116 Mo. 169.

*E. C. Slevin* for respondents.

(1) A debtor in failing circumstances or insol-
vent may bona fide prefer one creditor to another.
Wood v. Porter, 179 Mo. 56; Martin v. Estes, 132 Mo.
402. And, in the absence of fraud, the preference may
be given to a creditor who is a kinsman as well as to
a stranger. Kincaid v. Irvine, 140 Mo. 615; Mansur
Co. v. Ritchie, 143 Mo. 587; Donk Bros. v. Stephens,
74 Mo. App. 39. I concede, however, that a preference
given to a kinsman should be scrutinized more care-
fully than when given to a stranger. (2) The burden
of proof is upon the plaintiff and there remains. Hay-
don v. Grocery Co., 88 Mo. App. 241; Wall v. Beedy,
161 Mo. 625; State ex rel. v. Cryts, 87 Mo. App. 440;
Mansur Co. v. Ritchie, 143 Mo. 587. The rule as
stated by appellant might be conceded, if the con-
veyance were merely voluntary, or a purchase. Wall
v. Beedy, 161 Mo. 625. (3) Whatever may be the in-
tention of a debtor in preferring a creditor, if there
exist a bona fide indebtedness the preference will be
upheld. Shelley v. Boothe, 73 Mo. 74; Bonney v. Tay-
lor, 90 Mo. 63; Alberger v. White, 117 Mo. 347;
Crothers v. Busch, 153 Mo. 606; Wall v. Beedy, 161
Mo. 625; Haydon v. Grocery Co., 88 Mo. App. 241. (4)
The delivery of a deed to a third party with directions

to deliver it to the one for whom it is intended, constitutes a good delivery. Peters v. Berkemeier, 184 Mo. 393; Coulson v. Coulson, 180 Mo. 709; In re Soulard's Estate, 141 Mo. 642; Appleman v. Appleman, 140 Mo. 309; Kuh v. Garvin, 125 Mo. 547.

FOX, J.—Plaintiff claims title to a certain lot and part of lot in the city of St. Louis, and by this suit seeks to have set aside and for naught held a certain alleged false and fraudulent deed of trust executed by defendant Pierre Nagle on said property, the same constituting a cloud on plaintiff's title.

In his petition plaintiff states that he is owner of lot 21, and five feet off the east part of lot 20, and three feet nine and one-half inches off the west part of lot 22, in city block 1024, in the city of St. Louis, the same being occupied by house numbered 3030 Morgan street, in said city; that said property was acquired by him at sheriff's sale, on June 14, 1905, under a judgment for debt against said Pierre Nagle. "That heretofore, to-wit, from March 1st to March 20, 1903, the defendant Pierre Nagle, who was then owner of the property aforesaid, was heavily indebted to divers and sundry persons in the city of St. Louis and elsewhere. That at said time the said Pierre Nagle, fearing lest said property should be seized upon by his creditors to satisfy their claims, did then and there collude and conspire with the defendants Richard Nagle, and J. Pirtle and said Felix E. Gunn, trustee, to aid and assist him to hinder, delay and defraud his said creditors, and to secrete his interest in the property aforesaid, and to prevent same being sequestrated and applied to the payment of said claims of said creditors, did enter into a fraudulent scheme and device, the general plan and purpose of which was that the said Pierre Nagle should execute a false and fraudulent note for a fictitious and wholly non-existent indebtedness, ostensibly due to his brother, Richard Nagle,

and should pretend to secure the same by a false and fraudulent deed of trust for a large amount, so as to make the equity of said Pierre Nagle appear small, insignificant and practically valueless; that to still further mystify and conceal the false and fraudulent nature of the transaction, said Pierre Nagle, acting upon the advice of one Brennan, did make out the notes to the defendant, J. Pirtle, with the understanding that they were to be indorsed by him and turned over to the defendant, Pierre Nagle, or whomsoever he might designate."

The further allegations of the petition are, in substance: That the defendants fully executed said fraudulent scheme and device, and that said Pierre Nagle, on March 19, 1903, made a note for $1700, payable three years after date, and interest notes, and executed and delivered to said Felix E. Gunn, as trustee, his certain deed of trust of even date therewith, for the ostensible purpose of securing said notes, which deed was placed of record, but that said notes and deed of trust were wholly fictitious and colorable, fraudulent and invalid, and that no consideration was given therefor; that plaintiff is advised and believes that said notes and deed of trust are held by the defendant Richard Nagle without any right thereto or interest therein, and that neither of the defendants, nor any holder under them, has any right or interest in the property aforesaid by reason thereof; that said deed of trust creates a cloud on plaintiff's title, which ought to be removed therefrom; that said Pierre Nagle is insolvent, and that plaintiff is advised and believes, and alleges the fact to be, that said Richard Nagle is insolvent, and that the other defendants have no beneficial interest in said property or in said notes or deed of trust; that there is a genuine deed of trust on said property which matures one day prior to the maturity of the fraudulent deed of trust aforesaid; that plaintiff has no adequate remedy at law and is in

danger of losing his said property if equity does not intervene, and that he is likely to suffer irreparable harm and injury.

Plaintiff prays "that the aforesaid deed of trust be set aside and for naught held, and that defendants be decreed to deliver up the same for cancellation, together with the notes described therein, and that the defendants, Pierre Nagle and Richard Nagle, be decreed and adjudged to pay to plaintiff any and all damages that may accrue to him by reason of their false and fraudulent clouding and encumbering his title, and for such other and further relief as to equity appertains, and which the court shall deem fit and proper."

The facts developed by the evidence are as follows:

Defendants Pierre and Richard Nagle are brothers, living together in St. Louis at the time of the trial. Pierre was a carpenter and contractor, and Richard a teamster. Both were illiterate, Richard more so than his brother. Pierre was a married man, and had several children; Richard was a bachelor. The latter testified at the trial that he was about sixty-five years old, had received no schooling, but learned to write his name after coming to America, when he was about nine years of age. He was a teamster nearly all his life, and at one time owned several teams and wagons, also some real property in the city of St. Louis. He had been accustomed to lend his brother sums of money, and had helped him to raise his family. In the year 1893, Pierre, being in financial straits, obtained a loan of $2000 from him. Richard did not have the money at the time Pierre applied to him for the loan, but raised it by hypothecating his property at the corner of Theresa and Clark avenues to August Gehner as trustee for Henry Hiemenz, who furnished the money. Pierre gave no note or other security to his brother for the money so borrowed, nor did Richard demand same of him, but Pierre afterwards.

promised to secure him. With the money thus borrowed, Pierre paid taxes on real property he owned, and paid other debts owing by him. Richard loaned other sums of money to Pierre at various times, the full amount, including the $2000 loan, being about $2700. Testifying at the trial, Richard said: "All the money I gave him put together made $2700. He didn't give me any note for it. I never asked him for a note. I asked him one day for some money, and he said, 'No, but I will secure you. I will give you a deed of trust.' I could not exactly say when that was. It must be three or four or five years ago; I could not say; I don't keep track of anything of that kind. It was up on Chestnut street, some place. I remember that very clearly. I didn't ask him only once. My brother spoke to me about that on Main street. He said he would secure me as quick as he could, though."

On March 18, 1903, Pierre Nagle obtained title to the property in dispute, located on Morgan street, and on the same day encumbered it with a deed of trust to secure a note for the sum of $2200, with the proceeds of which he paid off an existing mortgage on the property, taxes, interest and various debts. The next day, March 19, 1903, he encumbered the property with a second deed of trust to secure a note for $1700, and delivered said note and deed of trust to Mr. Brennan, a real estate man, instructing him to turn them over the trustee was the defendant Felix Gunn. Pierre had the deed of trust recorded. It appears from the evidence that the payee of the note for the principal sum, and interest notes, was one John Pirtle, and that the trustee was the defendant, Felix Gunn. Pierre Nagle testified that he made the deed of trust to secure his brother for money loaned and advanced him, and said, "I made it in Pirtle's name because it was customary, and Mr. Brennan advised me to." He further testified: "I was going to make this deed in

229 Sup—37

the name of my brother, and Mr. Brennan said, 'No, don't do it. You make it the same as they all do—in some one else's name.' He gave no reason for that; only said it was customary. He didn't say anything at the time as to the putting of the deed in the name of my brother looking bad from the standpoint of my creditors, nor anything to that effect." Joseph C. Darst, a real estate agent, testified that it was customary to make the payee of notes secured by a deed of trust a "straw man," or some person other than the person loaning the money, and that "probably three-fourths of the notes made on Chestnut street are made in that way;" that the practice "is universal among the agents, as far as the agents can control it." After the delivery of said papers to Brennan, Pierre told Richard Nagle that the deed of trust was in Mr. Brennan's office and that he could get it any time he wanted it. Brennan also met Richard on Chestnut street one day, and said, "There's a package in the office for you, and I think it's a deed of trust," whereupon Richard said, "Leave it there; it's safer there than with me."

Both Pierre and Richard Nagle testified that the former paid all of the interest notes, save one, on the loan of $2000 secured by Richard through the hypothecation of his property on Theresa and Clark avenues, which $2000 was loaned to Pierre without any security at the time. About a year and three months before the trial Pierre did considerable work for Richard, for which he charged him $155. He asked Richard for some money. The latter did not have any, and told Pierre to go to Brennan's office and cancel interest notes to the value of $155. Pierre went to said office and asked for Richard Nagle's papers, and received them. He canceled six of the interest notes of the value of $153, and by the time he had canceled them there was no one in the office to receive the papers back. He therefore put the papers in his pocket, walk-

ed out, and kept them in his pocket two or three days, when he returned them to the office, saying, "This is Dick Nagle's papers; please put them back in the safe." In the package were six interest notes, the principal note, and the deed of trust. On the outside of the package was a card stating that the papers belonged to Richard Nagle, which card Pierre never saw afterwards, and it was not produced at the trial. Mr. Brennan, testifying for the defendants, stated that a package of papers was placed in his possession, and he was told that it included a deed of trust; that Richard Nagle's name was on the package, the handwriting being, as he thought, that of his clerk; that Richard Nagle was given possession of the papers about a year before the trial; that Pierre Nagle had possession of the papers before that, and they were afterwards returned to Brennan's office and placed in the safe; that about a year and a half or two years before the trial he (witness) had a talk with Pierre Nagle in relation to selling his Morgan street property, that Pierre then told him that it was encumbered with two deeds of trust, and that "the second deed was Richard Nagle's." It appears from Richard Nagle's testimony that he did not take the papers from Brennan's office until about two months before the commencement of this suit, and that after suit was filed he took them to his lawyer.

The evidence shows that Pierre Nagle was indebted to various persons at all times in his business career. Among his creditors was one John Dooly, to whom he became indebted in the year 1899 for work done on a house Pierre then owned in Westminster Place, St. Louis. He paid part of the indebtedness, and Dooly did not press him to pay the remainder. Dooly died, and after his death there was organized the John E. Dooly Furnace Company, which company, on December 8, 1904, brought suit to recover the amount of the indebtedness, and obtained judgment

against Pierre Nagle in the sum of $176.65 and costs. Execution was issued by the justice, and the constable returned same *nulla bona*. A transcript of the judgment was filed in the circuit clerk's office, and on May 11, 1905, a levy was made upon Pierre Nagle's property on Morgan street, described in the petition, and the same was sold for $400 to the plaintiff, who received the sheriff's deed thereto.

It appears from the testimony of Mr. Hugh D. McCorkle, attorney for plaintiff, that he advised plaintiff to purchase the property at the execution sale; that an agreement was made between them that he, McCorkle, would institute suit for plaintiff against Richard Nagle to set aside the deed of trust in question on the ground of fraud, and that if plaintiff should win the suit, the proceeds or profits, after paying the judgment of the Dooly Company, should be divided between them. In pursuance of said agreement, this suit was instituted.

According to the testimony of the two brothers, except as to the note and deed of trust for $1700, Pierre Nagle never paid Richard any money on account of the indebtedness of $2700.

There was a great deal of evidence in this case, particularly with reference to the debts and various real estate deals of Pierre Nagle, but the foregoing facts are the more salient and important.

The court found for the defendants, and rendered judgment in favor of defendants, and against plaintiff for costs, and dissolved the temporary injunction theretofore granted plaintiff, from which judgment plaintiff appealed to this court.

## OPINION.

There is, as we think, but one vital, controlling question in this case, and that is, was Pierre Nagle bona fide indebted to his brother, Richard, in the sum

of $1700? If he was, he undoubtedly had the right to give him his note for that sum, and secure it with the deed of trust in question, and Richard had the right to take such security, no matter if at the time Pierre was indebted to others.

The petition alleges that Pierre Nagle conspired with Richard Nagle and J. Pirtle, and Felix E. Gunn, trustee, to aid and assist him to hinder, delay and defraud his creditors, and that such conspiracy was carried out by the giving of the note for $1700 and the deed of trust to secure the same, and that said note and deed of trust were fraudulent and without consideration.

Plaintiff having charged fraud in the transaction, upon him rested the burden of proving it. [Wall v. Beedy, 161 Mo. 625; Mansur-Tebbetts Imp. Co. v. Ritchie, 143 Mo. 587; State ex rel. v. Hope, 102 Mo. 428; Haydon v. Alkire Gro. Co., 88 Mo. App. 241.]

The evidence is that in 1893 Richard Nagle loaned his brother, Pierre, $2000. In order to do this he borrowed that amount from one Frank Hiemenz, giving his note and deed of trust therefor. This deed of trust was introduced in evidence. Pierre, at the time, gave his brother no security for the loan, nor was it asked. Other sums of money, amounting to $700, were afterwards loaned by Richard Nagle to his brother. Richard was in good circumstances at the time, and the reason why he did not ask Pierre to pay the loan sooner than he did was, as he testified, because "I didn't need it, and I thought he might as well have it as anybody else." He further stated that he was not uneasy about the debt, and that he had confidence in his brother. One day, meeting Pierre on Chestnut street, Richard asked him for some money. Pierre did not have any money, but said he would secure him "for some of that money." Some time after this Pierre again met Richard and told him about his having executed the deed of trust in question, that it

was at Brennan's office, and that he (Richard) could get it at any time.

It is true that the only documentary evidence introduced, supporting the testimony of the brothers as to these loans, was the record of the deed of trust placed by Richard on his property at Theresa and Clark avenues, but their testimony stands unimpeached. Richard was very illiterate and kept no memoranda or books of account, and the business methods of both brothers were crude. Pierre's testimony was taken three times: once before a justice of the peace, again before a commissioner appointed by the circuit court to take his deposition, and at the trial. Richard was examined twice—before the commissioner, and at the trial. Counsel for plaintiff closely compares and analyzes their testimony on all these occasions. We fail to see any serious inconsistencies in their testimony, and think the learned counsel's inferences and conclusions very strained. The statements of the brothers as to the indebtedness are at all times consistent. In answer to a question of the court, Richard says: "He owed me that money. If I was dying to-morrow, I would say he owed me that money." The trial court had opportunity to note the demeanor of the witnesses, and was evidently convinced that they told the truth. Whatever may be thought of Pierre's various real estate transactions, and his motive in placing this deed of trust on his property, there is no evidence indicating that Richard participated in, or had knowledge of, the fraud, if there was such, which we do not believe.

Richard Nagle was simply a preferred creditor, and in taking the security offered him he was acting within his rights. As shown by the testimony, Pierre owed Richard $2700 altogether, while the note to secure which the deed of trust was given was only for $1700. "Where the right of preference, as in this State, is recognized, we cannot see how it is possible

for one creditor, who gets nothing more from the debtor than sufficient to pay off, discharge or settle his just claim, to commit a fraud against the rights of other creditors, or how he can be said to have participated with the debtor in the commission of a fraud." [Wall v. Beedy, supra, l. c. 639.] It is firmly established doctrine in this State that a debtor may prefer one creditor over another, even though the preferred creditor be a relative of the debtor; but in the latter case the fact of relationship is to be considered with the other facts and circumstances. [Mansur-Tebbetts Imp. Co. v. Ritchie, supra; Kincaid v. Irvine, 140 Mo. 615; Donk Bros. v. Stevens, 74 Mo. App. 39.] In the Kincaid case, supra, it is said: "So long as there is no fraud in the transaction, a debtor in failing circumstances may prefer his kinsman, who is his creditor, as well as a stranger. While a court of equity will scan the transaction with jealous eyes, preference and relationship alone will not afford sufficient evidence of fraud." A close reading of the record in this case convinces us that the evidence is entirely insufficient to establish the charge of fraud.

Plaintiff contends that the evidence was not sufficient to support a constructive delivery of the deed of trust prior to the attaching of the Dooly Company judgment lien. The justice's judgment in favor of the John E. Dooly Furnace Company was rendered December 8, 1904, and the transcript filed some time afterwards in the circuit clerk's office. The deed of trust, executed March 19, 1903, was promptly recorded, and then placed in the hands of Mr. Brennan, who was instructed by Pierre Nagle to turn the same over to Richard Nagle. Thereafter Pierre told Richard where he had placed the notes and deed of trust and that he could get them at any time. Brennan, having met Richard on the street, said to him: "There's a package in the office for you, and I think it's a deed of trust." Richard said, "Leave it there; it's safer

there than with me.'' These occurrences, as the evidence indicates, all took place many months before the said judgment was secured. Brennan also testified that Richard Nagle's name was on the package in question, although he (Brennan) did not personally know that it contained a deed of trust, as he had not seen it. He further stated that about a year and a half before the trial, in a conversation had with Pierre Nagle, the latter told him that the second deed of trust with which his property was encumbered belonged to Richard Nagle. The trial began April 5, 1906, and this conversation, had a year and a half previously, was two months before the Dooly Company judgment was rendered. Despite these facts, plaintiff claims that because Pierre Nagle, about a year and three months before the trial, took the papers from Brennan's office, cancelled some of the interest notes, and returned the papers to Brennan's office a week later, he had not divested himself of dominion over the deed, and there was, therefore, no delivery of the deed before that time. This argument is not tenable. The evidence clearly shows that Pierre, in going to Brennan's office and cancelling the interest notes, was acting under Richard's direction. We think the evidence establishes a constructive delivery of the deed of trust prior to the attaching of the Dooly Company judgment lien, and we fail to find that Pierre Nagle exercised any control or dominion over the deed after he placed it in Brennan's hands for delivery to his brother. This being so, the fact is of little consequence that Richard Nagle did not take physical possession of the papers until some months afterwards.

It appears that the trial court made and handed down a memorandum of its findings of fact, but that said memorandum became lost, and the same is not before us. Counsel for the respective parties are not in accord as to what the memorandum contained. In equity cases, however the appellate court is not bound

by the trial court's findings of fact, but will review the evidence and render such judgment as good conscience dictates. [State ex rel. v. Jarrott, 183 Mo. 204, and cases cited.]

The judgment of the circuit court is well supported by the evidence, and we see no reason for disturbing it. It is therefore affirmed.

All concur.