CURTIS HAYDON, Interpleader, Appellant, v. ALKIRE GROCERY COMPANY et al., Respondent.

### Kansas City Court of Appeals, April 1, 1901.

1. **Bill of Exceptions:** EVIDENCE OF FILING: RECORD ENTRY. The only evidence of a bill of exceptions being filed in term is an order entered of record to that effect.

2. ———: ———: NUNC PRO TUNC ENTRY. A paper in the cause may be sufficient evidence to justify a *nunc pro tunc* entry; and a bill of exceptions properly signed by the judge and indorsed by the clerk's file-mark will authorize the *nunc pro tunc* record entry ordering its filing.

3. ———: DEATH OF PARTY: ALLOWANCE OF TO SUCCESSOR. A bill of exceptions can not be presented by a dead man, but exceptions taken by a party while alive may be embodied in one bill and certified by the judge after that party's death.

4. **Fraudulent Conveyances:** FIRM CONVEYANCE INCLUDING INDIVIDUAL DEBTS: FRAUDULENT INTENT: INSTRUCTIONS. Including fictitious claims in a conveyance to secure a valid debt avoids the whole security, but while a claim is honest in itself and the parties probably consider such debt might be properly so secured, it must be shown that such debt was included with a fraudulent purpose, and instructions should submit the existence of such purpose to the jury.

5. ———: CREDITOR SECURING HIMSELF: HINDERING AND DELAYING: INSTRUCTIONS. Instructions telling the jury that if the debtor in making certain conveyance intended to defraud his creditors, and the interpleader knowing of such intention had aided or in any way assisted in carrying it out, such act would render the conveyance void, are held not in harmony with a long line of decisions in this State but are nevertheless allowed, since they are approved in Alberger v. White, 117 Mo. 347.

Appeal from Boone Circuit Court.—*Hon. John A. Hockaday,*
Judge.

REVERSED AND REMANDED.

*W. M. Williams* and *Webster Gordon* for appellant.

(1) The point is pressed by respondent that the bill of
exceptions could not be filed after the death of Hombs. Re-
spondents cite the case of Murphy v. Redmond, 46 Mo. 317.
It was there held that a motion for a new trial could not be
passed upon after the death of one of the parties to the suit.
This was expressly overruled in State ex rel. Meinhard v.
Stratton, 110 Mo. 431, where it was declared to be the duty
of the court to pass upon such motions notwithstanding the
death of a party subsequent to the judgment. It would cer-
tainly be a harsh and unreasonable construction of the statute
to hold that the trial court, after the death of the party, must
do everything to make its judgment final and effective, by pass-
ing upon motions filed subsequent to such judgment, and yet,
that it is powerless to preserve and make of record a memorial
of its proceedings prior to such judgment. (2) It will be
noted that the exceptions in the case at bar were all taken in
the lifetime of the interpleader Hombs. The court simply
completed its record after his death by filing a bill showing the
exceptions that he had taken in his lifetime. In theory, the
bill speaks as of the date of the trial. 3 Ency. of Pl. and Pr.
464. (3) The objection that the party must prepare the
bill, and that it is his bill, is not well taken. He saved his
exceptions at the time. It is wholly immaterial who writes
the bill. The judge may prepare the bill of exceptions.
Shepard v. Brenton, 15 Ia. 84. (4) Respondents claim that
the bill of exceptions could not become a part of the record

until "allowed" by the court, and that an entry by the clerk upon the record showing that fact was necessary, and that the court erred in making the *nunc pro tunc* entry. Cunningham v. Wells, 16 Mo. App. 78, which is founded upon Fulkerson v. Houts, 55 Mo. 301, and cases like it, is the authority cited in support of this position. These cases were decided before the statute of 1885 authorized the filing of a bill of exceptions in vacation. Steinberg v. Ins. Co., 49 Mo. App. 257; Ferguson v. Thacher, 79 Mo. 511; Finlay v. Gill, 80 Mo. App. 458; State v. Rolley, 135 Mo. 677; Bensley v. Haeberle, 20 Mo. App. 648; Steinberg v. Ins. Co., 49 Mo. App. loc. cit. 257; State v. Rolley, 135 Mo. 677. (5) The second instruction asked by the interpleader, and which was modified and given by the court of its own motion, is erroneous. It told the jury, in substance, that the deed of trust relied upon by the interpleader, was fraudulent and void if the note for $4,800 included the note for $1,000 of W. T. Hombs, and that of $1,000 of O. W. Barnett, unless they were embraced therein by the assent of both partners. The instruction complained of informed the jury that, as a matter of law, if these debts were included in the deed of trust, without the assent of both partners, the deed was thereby rendered fraudulent. The intent with which they were included was entirely omitted, and that was never passed upon by the jury, and in this there was error. Bank v. Winn, 132 Mo. loc. cit. 89; Sexton v. Anderson 95 Mo. 373; Hardware Co. v. Randell, 69 Mo. App. 342; Dry Goods Co. v. McMahan, 61 Mo. App. loc. cit. 507; Sexton v. Anderson, 95 Mo. l. c. 382. (6) The instruction was also misleading in another particular. It declared that the instrument was void because it secured the two $1,000 notes, unless they were included in the instrument with the assent of both partners. The jury might understand from that instruc-

tion that Barnett must have assented to the arrangement before the deed was executed. It was sufficient, however, if it appeared to the satisfaction of the jury, that he consented to and acquiesced in the arrangement before the attaching creditors acquired a lien upon the goods. Reyburn v. Mitchell, 106 Mo. loc. cit. 373; Fitzpatrick v. Flannagan, 16 Otto, 248; In re Estate of Edwards & Wigginton; Grocery Co. v. McCune, 122 Mo. 426. (7) The court erred in giving the fourth and fifth instructions asked by the plaintiffs in attachment. Shelley v. Boothe, 73 Mo. 74; Hazell v. Bank of Tipton, 95 Mo. loc. cit. 66; Ettlinger v. Kahn, 134 Mo. 492; Hard v. Foster, 98 Mo. 313; Singer v. Goldenburg, 17 Mo. App. 549; Hurley v. Taylor, 78 Mo. 238.

*C. B. Sebastian* and *Wellington Gordon* for respondent.

(1) The so-called bill of exceptions, which was presented and attempted to be filed by counsel in the name of John L. Hombs, the original interpleader, after his death, and before any steps were taken to revive the case, is an absolute nullity and constitutes no part of the record in this cause. Murphy v. Redmond, 46 Mo. 317. (2) Even if a dead man could appear by counsel in an earthly tribunal and file a bill of exceptions, there is nothing in the record in this cause to show that a bill was actually filed. But when a bill of exceptions is filed in term time, as this one purports to be, the simple file-mark of the clerk is insufficient to make it a part of the record. The filing must be evidenced by an appropriate entry of record to that effect. State v. Wilson, 44 Mo. App. 136; Fulkerson v. Houts, 55 Mo. 301; Pope v. Thompson, 66 Mo. 661; Carter v. Prior, 78 Mo. 222; Warehouse Co. v. Glasner, 52 S. W. Rep. 237; Strauss v. Hirsch, 63 Mo. App. 95; Loewen v. Forsee, 137 Mo. 29. (3) The law as de-

clared in the case of Sexton v. Anderson, 95 Mo. 382, is clearly set out in appellant's instruction numbered one. Imp. Co. v. Ritchie, 143 Mo. 607; Imhoff & Co. v. McArthur, 146 Mo. 371; State ex rel. v. Hardware Co., 147 Mo. 366; Lumber Co. v. Mining Co., 78 Mo. App. 676. (4) Counsel for respondents are not sure that they understand the criticism made by appellant on respondent's fourth and fifth instructions. These instructions in nowise limited the right of the bank to accept a preference. These two instructions for respondents were expressly approved in Alberger v. White, 117 Mo. 347; Implement Co. v. Ritchie, 143 Mo. 587.

ELLISON, J.—Plaintiff brought suit by attachment in the circuit court of Boone county. Afterwards, an interplea was filed by the trustee in a chattel deed of trust claiming the property. A trial of the interplea resulted in a judgment for plaintiff. The interpleader took the necessary steps looking to an appeal, and obtained leave to file a bill of exceptions after the term. Before attempting to file the bill he died and afterwards another was substituted as interpleader. At a subsequent term of the court, and within the time allowed, a bill of exceptions was signed by the judge and indorsed "filed" by the clerk of the court with his official signature. No record entry was made showing a filing. Neither was there any memorandum on the judge's docket or the clerk's minutes showing a filing. The case was then taken to the Supreme Court by appeal, and from there transferred to this court for want of jurisdiction in that court. After the case was taken to the Supreme Court, interpleader went into the circuit court and applied for a *nunc pro tunc* order of record showing the filing of the bill. The order was granted and plaintiff appealed. He now insists that there was no ground for the order and that the bill of exceptions should be stricken out. The only foun-

dation for the *nunc pro tunc* order was the signature of the judge at the bottom and the indorsement "filed," made by the clerk on the back of the bill.

In this State the only evidence of a bill of exceptions being filed in term is an order entered of record to that effect. In Fulkerson v. Houts, 55 Mo. 301, it is said that the term "filed," "has a broader signification than the mere indorsement to that effect, and comprehends more especially, in its proper interpretation, the entry made by the clerk on the record, by which the fact that the bill has been allowed, is announced and appropriately evidenced." In Pope v. Thompson, 66 Mo. 661, it is said: "Neither the indorsement of the clerk on the bill of exceptions, 'filed,' with day and date, nor the statement by the judge that it is signed, sealed and made part of the record, nor both, will suffice. There must be a record entry that it was filed." Several other cases affirm these.

The force of these decisions made necessary the application for a *nunc pro tunc* order. After a full consideration of the question we have concluded that the order filing the bill of exceptions was based on sufficient evidence and was properly made by the trial court. A *nunc pro tunc* order entering of record some matter which, though having transpired, had by some means been omitted from the record, may be based on some paper in the cause which affords evidence that that which is sought to be made of record was in fact ordered, or adjudged. In passing on an application for a *nunc pro tunc* order the court is not confined to the minutes of the clerk, or of the court, or docket entries. In the cases which consider what is competent evidence for this purpose it will be noted that a paper in the cause is named as one of the sources from which sufficient evidence may be drawn. Gamble v. Daugherty, 71 Mo. 599; St. Francis M. Co. v. Sugg, 142 Mo. 358; Loring v. Groomer, 110 Mo. 639; Ross v. Railway, 141 Mo. 390. In this case

the bill of exceptions was a paper in the cause, for, as above stated, it was signed by the judge and marked "filed" by the clerk. But counsel say that a bill of exceptions may be signed by the judge and indorsed with the signature of the clerk, "filed," and yet not ordered to be filed by the court so as to authorize an entry of record that it was filed. The bill closed with the following request or prayer: "Wherefore, the interpleader prays the court to settle and allow this his bill of exceptions and that the same may be signed, sealed and made a part of the record herein, which is accordingly done this twentieth day of November, A. D. 1896."

"John A. Hockaday,

"Judge Circuit Court Boone County."

We are satisfied that the bill was of sufficient probative force to show, without reasonable doubt, that it was ordered to be filed and that the record entry of such filing should then have been made.

But plaintiff further objects to the bill on the ground that it is the bill of exceptions of a party who died before it was allowed and ordered to be filed by the court. It is true that this bill was put in form and presented for allowance by the substituted trustee after the death of the trustee interpleader who was the party at the trial and who participated therein. While it is a self-evident proposition, as asserted by plaintiff, that a bill of exceptions can not be presented by a dead man, yet exceptions taken by the party while alive may be embodied in one bill and certified by the judge after the party's death. The bill of exceptions is a record of matters of exception which were taken by the objecting party. The exceptions taken become a part of the cause as it progresses and the proper successor of the excepting party may use them in the further prosecution or defense of the case just as the original party taking them might have used them; and when a bill embody-

ing the exceptions is presented to the trial judge by such successor, he should authenticate it with his signature just as he would if the party had lived and presented it himself.    Kelly v. Riley, 106 Mass. 339; Tapley v. Martin, 116 Mass. 275; Shepard v. Brenton, 15 Iowa 84.

This brings us to a consideration of the merits of the appeal taken by the interpleader in the principal case.    He merely represents in this controversy the interests of the Sturgeon Savings Bank, the beneficiary in the chattel deed of trust in which he is the substituted trustee.    We will state the case from the point of view of each party:

It appears that the mercantile firm of Robinson & Hombs did their banking business with that bank and became indebted to it in the sum of $2,000, for which the bank held the firm's note.    Robinson sold out his interest in the partnership to O. W. Barnett.    The note representing this indebtedness was taken up and Hombs and Barnett separately made their note to the bank for $1,000 each.    The business continued thence on under the style of Hombs & Barnett, they continuing to do business with the bank.    They also became indebted to the bank in several promissory notes amounting approximately to $3,000. After this indebtedness had accrued to the bank, Hombs proposed to sell his interest in the partnership to Barnett, conditioned on the latter being able to get the money sufficient to pay on the goods.    Barnett undertook to get the money from the bank, intending to secure it with the merchandise.    The bank refused to advance any further sum, but insisted on being secured on what was already owing to it.    It was then arranged between Ritchie the cashier of the bank, Hombs and Barnett, that Hombs and Ritchie should go to Columbia and adjust the matter.    They did so and Hombs, in the name of Hombs & Barnett, executed a note for $4,800, and the deed of trust in controversy to secure it.    This note included the indebtedness

Haydon v. Alkire Grocery Co.

already referred to as being represented by the two notes of $1,000 each, executed separately by Hombs and Barnett and which was originally the indebtedness of Robinson & Hombs, as before stated.  On the next day the trustee took possession of the goods.  The several attachment suits, afterwards consolidated by the court, were thereafter brought for the firm's indebtedness to various wholesale dealers and the interplea was thereafter interposed.

Much of the foregoing was not a matter of dispute.  But there was evidence tending to show that Ritchie, as cashier of the bank, conspired with Hombs and Barnett to defraud the attaching creditors, and that while taking the deed of trust to secure the bank's indebtedness he had the further purpose and intent to aid Hombs & Barnett in hindering and defrauding the attaching creditors.

The principal complaint made by the interpleader relates to the instructions given by the trial court at the request of plaintiff.  The first and second instructions modified by the court and given for plaintiff, were based on the fact shown in evidence that the indebtedness, represented by the two individual notes of Hombs and of Barnett for $1,000 each, was included in the total secured by the deed of trust which, it will be borne in mind, was made by Hombs alone in the name of the firm.  The effect of the declaration in the instructions was that if these notes were included in the deed of trust without the assent of Barnett, the other partner it rendered the deed void as to the plaintiffs.  That is to say, that since the firm property could not be conveyed to secure the individual debt of the partners without the consent of such partners, then if Barnett did not consent to the deed it included a debt which could not be made a charge against the firm's property, and was therefore fraudulent.  All question of fraudulent intent is omitted from the instruction; the simple addition of an improper debt

to those which were concededly proper claims against the firm, rendered the trust deed void as a matter of law. This was error. If the notes referred to were included without an intent to defraud and in the honest belief that they, with the other claims, could be legally secured by the property of the firm, then the mistake made ought not to annul the security for the proper claims.• The rule in this State that including fictitious and invalid claims with valid ones will render void the security for the whole, both good and bad, has its foundation on the desire to circumvent fraud. In other words, fraud must enter into the combination of the good and bad in one conveyance in order to annul the deed as to the good. This is undoubtedly the meaning of the following adjudications. State ex rel. Robertson v. Hope, 102 Mo. 410; Boland v. Ross, 120 Mo. 208; Bank v. Winn, 132 Mo. 80; Bank v. Mead Mer. Co. 151 Mo. 149; Bangs M. Co. v. Burns 152 Mo. 350; Cole v. Yancey, 61 Mo. App. 234. But when the fraudulent intent is ascertained, then the fact that the debts are capable of being separated, the good from the bad, will not save those which are good. Ball v. O'Neill, 64 Mo. App. 388. This case (in the respect just considered) is one where the jury may well find that there was no fraud intended. For though the two claims were conceded to be improperly embraced in the deed of trust, yet they represented valid indebtedness owing originally to the bank from the mercantile establishment when it was owned by Robinson & Hombs. The debts were assumed as above set out. It is not improbable that the parties would consider that such indebtedness might be secured by the stock of merchandise then existing and which was but a continuation of the stock formerly owned by Robinson & Hombs.

The fourth and fifth instructions declared that if it was the intention of Hombs & Barnett in executing the deed of trust to defraud their other creditors and that the bank had

knowledge of such fraudulent intention "and aided or in any way assisted" them in carrying out such intention, the verdict must be for plaintiffs. Interpreting these instructions literally, they are not in harmony with a long line of decisions in this State. Crothers v. Busch, 153 Mo. 606; Shelley v. Boothe, 73 Mo. 74; Singer v. Goldenburg, 17 Mo. App. 549; and other like cases. It is not enough that a creditor knows that the debtors' intention in securing his claim is to hinder, delay or defraud other creditors. He may know this and yet proceed to save himself; and if in securing his own claim he, by that act, aids the debtor in his fraudulent purpose, it is but an incident, or result of his right to make himself secure and which ought not to annul his security. In this case the indebtedness to the bank is not questioned. The bank, knowing of the evil purpose and intention of its debtors to hinder and delay other creditors, accepted a conveyance of property to secure itself with a knowledge that the effect of such conveyance would be to hinder and delay such creditors and that its acceptance of the conveyance would aid and assist such fraudulent purpose. The instructions refused to direct a verdict for plaintiffs in such state of case; for by accepting the conveyance the bank did, in the language of the instructions, in some way assist the debtor in his evil purpose. If they had declared that the bank, having notice of the debtor's fraudulent intent, took the deed of trust securing its claim, not because it really desired to secure it, but for the purpose of aiding the debtors in their fraudulent scheme; or, if written as they are, there had been added, by way of explanation, after the words, "in any way aided or assisted in such intent," the words, "except as taking the conveyance to secure the bank, itself may have aided such purpose," then they would have been more in harmony with the authorities aforesaid. The bank may have legally and properly done just what is hypothetically stated in the instructions, and yet

the singular incongruity appears in a direction to the jury to find against it for so doing.

Notwithstanding what we have just stated, we are not at liberty to say that the action of the court in giving the instructions was error, feeling concluded by the case of Alberger v. White, 117 Mo. 347. In that case instructions like these were approved by a majority of the court after a thorough consideration. It is, however, proper to say that the point of criticism presented by counsel here does not appear to have been presented or considered in the opinion in that case. But notwithstanding this, we do not feel justified in condemning instructions substantially the counterpart of those upheld in the case referred to.

With the exception of the two instructions herein first considered, we have discovered no substantial error. The objection made to some of the evidence admitted we believe not well founded. The facts and circumstances appearing in the case justify the ruling of the court. As to conversation with Cashier Ritchie, he appears by the record to be virtually the bank itself, and we believe the ruling in that respect not objectionable. The judgment is reversed and cause remanded. All concur.